THE STATE OF OHIO, APPELLEE, *v.* EMERSON, APPELLANT.

[Cite as *State v. Emerson,* 134 Ohio St.3d 191, 2012-Ohio-5047.]

*Criminal law—DNA testing—A person has no reasonable expectation of privacy in his or her DNA profile extracted from a lawfully obtained DNA sample, and a defendant lacks standing to object to its use by the state in a subsequent criminal investigation.*

(No. 2011-0486—Submitted January 18, 2012—Decided November 1, 2012.)

APPEAL from the Court of Appeals for Cuyahoga County,

No. 94413, 192 Ohio App.3d 446, 2011-Ohio-593.

_____

SYLLABUS OF THE COURT

A person has no reasonable expectation of privacy in his or her DNA profile extracted from a lawfully obtained DNA sample, and a defendant lacks standing to object to its use by the state in a subsequent criminal investigation.

_____

**CUPP, J.**

{¶ 1} There are two issues presented in this case. First, when a sample of a person's DNA is lawfully obtained by the state during the course of a criminal investigation but the person is acquitted of that crime, does that person have standing to object under the Fourth Amendment to the U.S. Constitution to the retention by the state of the DNA profile obtained from that sample or its use in a subsequent criminal investigation? Second, is the state authorized to retain and subsequently use a DNA profile when the DNA sample was lawfully taken from a person during a criminal investigation, but the person was acquitted?

**{¶ 2}** For the reasons that follow, we conclude that a person does not have standing to object to the retention of his or her DNA profile or the profile's use in a subsequent criminal investigation, and the state is authorized to retain the DNA profile and to use it in a subsequent investigation even though the profile was obtained from a sample taken during the investigation of a crime of which the person was acquitted. We accordingly affirm the judgment of the court of appeals.

## I. Facts and Procedural History

### A. Combined DNA Index System

**{¶ 3}** The Combined DNA Index System ("CODIS") "is a computerized program designed to house DNA profiles from convicted offenders, forensic samples, suspects, missing persons, unidentified remains and relatives of missing persons in various searchable databases." Ohio Bureau of Criminal Identification and Investigation, *CODIS Methods Manual*, Section 1 (2009). There are three levels in CODIS—local, state, and national. *Id.* at Section 1.1. In this case, the local databases were the Cuyahoga County Coroner's Office and the Ohio Bureau of Criminal Identification and Investigation's ("BCI") Richfield laboratory. The state database is maintained at BCI's London laboratory, and the Federal Bureau of Investigation maintains the national database. The Criminal Justice Information System Wide Area Network links the three CODIS levels.

### B. DNA Profile Created from a DNA Sample

**{¶ 4}** A DNA sample is processed to yield a DNA profile. A DNA profile consists of a series of numbers that represent different alleles[1] that are present at different locations on the DNA. Thus, those numbers constitute the DNA profile used by the laboratories in making comparisons.

---

1. An allele is defined as "either of a pair of genes located at the same position on both members of a pair of chromosomes and conveying characters that are inherited in accordance with Mendelian law." *Webster's New World Dictionary, Third College Edition* 36 (1988).

*C. DNA Sample from 2005 Rape Investigation*

**{¶ 5}** In 2005, appellant, Dajuan Emerson, was accused of rape. In the course of the investigation, a search warrant was executed to obtain a DNA sample from appellant.

**{¶ 6}** The sample was processed and a DNA profile was obtained. The profile was placed into CODIS at the local level and, eventually, was entered in a "suspect" database at the state level.

**{¶ 7}** Appellant was acquitted of the rape charge. After his acquittal, the DNA profile remained in CODIS. Appellant did not seek to have the profile expunged.

*D. 2007 Homicide*

**{¶ 8}** In July 2007, Marnie Macon was murdered in Cleveland, Ohio. Blood was found on a door handle at the crime scene, and the Cleveland Police Department submitted a sample of the blood to the Cuyahoga County Coroner's Office. A DNA analyst with the coroner's office processed the blood sample, and the resulting DNA profile was entered into CODIS at the local level as a forensic unknown.

**{¶ 9}** The profile was sent electronically to the state. In August 2008, a report generated at the state level was sent to the coroner's office and the forensic scientist at BCI's Richfield laboratory, notifying each that a forensic match had been found between the profile submitted by the coroner's office and a known profile in BCI's system. Specifically, appellant's DNA profile, which was obtained during the 2005 rape case, matched the DNA profile obtained from the blood found at the homicide scene.

**{¶ 10}** A search warrant was issued to obtain a DNA sample from appellant. The sample was processed by the coroner's office, and the resulting DNA profile was compared with the unknown DNA profile in the homicide case.

*E. Aggravated Murder*

**{¶ 11}** In March 2009, appellant was indicted on one count each of aggravated murder, aggravated burglary, and tampering with evidence. Appellant filed a motion to suppress any DNA evidence. After holding a hearing, the trial court denied the motion.

**{¶ 12}** The matter proceeded to trial. The jury found appellant guilty of aggravated murder and tampering with evidence. The trial court, however, granted appellant's Crim.R. 29 motion for judgment of acquittal on the aggravated-burglary count. On appeal, the Eighth District Court of Appeals affirmed. 192 Ohio App.3d 446, 2011-Ohio-593, 949 N.E.2d 538.

**{¶ 13}** We accepted appellant's appeal under our discretionary jurisdiction to review two questions of law: (1) does a person have standing to object under the Fourth Amendment to the retention of a DNA profile by the state and its use in a subsequent criminal investigation, when the profile was lawfully created during a previous criminal investigation, but the person was acquitted of the crime and (2) does the state have the authority to retain a DNA profile that was created during a criminal investigation and use that profile in a subsequent investigation, when the person was acquitted of any crime following the first investigation. 128 Ohio St. 3d 1556, 2011-Ohio-2905, 949 N.E.2d 43.

## II. Analysis

*A. Standing to Object*

**{¶ 14}** Appellant argues that he has a reasonable expectation of privacy in the DNA profile obtained from his sample. He contends that the state was able to use the DNA profile only for its lawfully obtained purpose—the rape investigation. Accordingly, appellant asserts that the continued retention of the DNA profile, and its subsequent use in the murder trial, was an impermissible search and seizure to which he has standing to object. In other words, the

retention and subsequent use implicated the Fourth Amendment independently of the taking of the sample.

{¶ 15} The Fourth Amendment to the United States Constitution and the Ohio Constitution, Article I, Section 14, prohibit unreasonable searches and seizures. We have interpreted Article I, Section 14 "to protect the same interests and in a manner consistent with the Fourth Amendment." *State v. Andrews*, 57 Ohio St.3d 86, 87, 565 N.E.2d 1271 (1991), fn. 1. The guarantee of the Fourth Amendment is protected by use of the exclusionary rule. *United States v. Calandra*, 414 U.S. 338, 347, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974).

{¶ 16} " 'Fourth Amendment rights are personal rights which * * * may not be vicariously asserted.' " *Rakas v. Illinois*, 439 U.S. 128, 133-134, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), quoting *Alderman v. United States*, 394 U.S. 165, 174, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969). "In order to have standing to challenge a search or seizure, the defendant must have a reasonable expectation of privacy in the evidence seized." *State v. Jackson*, 102 Ohio St.3d 380, 2004-Ohio-3206, 811 N.E.2d 68, ¶ 6, citing *Alderman* at 171-172. To determine whether a defendant has a reasonable expectation of privacy, it first must be determined whether "the individual manifested a subjective expectation of privacy in the object of the challenged search." *California v. Ciraolo*, 476 U.S. 207, 211, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986), citing *Smith v. Maryland*, 442 U.S. 735, 740, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979). Then, a court must decide whether society is willing to recognize that expectation as reasonable. *Id.*

{¶ 17} The defendant bears the burden of demonstrating that he possessed a legitimate expectation of privacy in the object of the search. *State v. Dennis*, 79 Ohio St.3d 421, 426, 683 N.E.2d 1096 (1997), citing *Rawlings v. Kentucky*, 448 U.S. 98, 104, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980).

{¶ 18} A person has a legitimate expectation of privacy in his or her bodily fluids. *See Schmerber v. California,* 384 U.S. 757, 770, 86 S.Ct. 1826, 16

L.Ed.2d 908 (1966). The expectation of privacy extends to the DNA in the sample obtained from appellant during the 2005 rape investigation. *See Smith v. State*, 744 N.E.2d 437, 439 (Ind.2001). However, that sample was obtained pursuant to a search warrant. Appellant is not now challenging the warrant and does not present any evidence that he challenged the warrant when it was issued. Thus, there was no Fourth Amendment violation with respect to that sample, *see id.,* and the resulting DNA profile.

{¶ 19} However, appellant argues that the DNA profile obtained from the sample taken during the 2005 rape investigation was used improperly. Specifically, appellant contends that the state was permitted to use the DNA profile only for the 2005 rape investigation and its retention and subsequent use subjected him to a new Fourth Amendment search and seizure. First, we must examine whether appellant manifested a subjective expectation of privacy in that DNA profile.

{¶ 20} A DNA sample and a DNA profile are not one and the same. Instead, a DNA sample is processed by a specialist to obtain the DNA profile. *See* R.C. 109.573(B)(5) and (H)(2). Once the sample is processed, a record is made of the profile. Accordingly, this scientific process results in a record separate and distinct from the DNA sample. Because a scientific process must be performed on a DNA sample by an agent of the government to obtain the DNA profile, and the DNA profile is separate and distinct from the DNA sample, we conclude that the DNA profile obtained from appellant's DNA sample was the work product of the government. *See Smith*, 744 N.E.2d at 439. Therefore, appellant had no possessory or ownership interest in the DNA profile. *Id.* Although, as discussed below, appellant may have been able to request expungement of that DNA profile from CODIS, BCI regulates access to and the use of the information until it is expunged. *See* R.C. 109.573.

{¶ 21} Additionally, appellant presented no evidence at the suppression hearing that he sought expungement of the profile from CODIS upon his acquittal or that he took any other action in the intervening years to seek removal of the profile from CODIS. Therefore, appellant did not manifest a subjective expectation of privacy in the profile, at least to the extent that it remained in the possession of the state for criminal investigatory purposes.

{¶ 22} Moreover, even if appellant had shown that he had manifested a subjective expectation of privacy in the DNA profile, society does not recognize that expectation as reasonable. " '[A] defendant [can] not plausibly assert any expectation of privacy with respect to the scientific analysis of a lawfully seized item of tangible property, such as a gun or a controlled substance. Although, human blood, with its unique genetic properties, may initially be quantitatively different from such evidence, once constitutional concerns have been satisfied, a blood sample is not unlike other tangible property which can be subject to a battery of scientific tests.' " (Emphasis omitted.) *Wilson v. State,* 132 Md.App. 510, 545, 752 A.2d 1250 (2000), quoting *People v. King,* 663 N.Y.S.2d 610, 614, 232 A.D.2d 111 (1997).

{¶ 23} Further, retention by the state of a DNA profile for possible future comparison with profiles obtained from unknown samples taken from a victim or a crime scene does not differ from the retention by the state of fingerprints for use in subsequent investigations. As stated in *Bickley v. State,* 227 Ga.App. 413, 415, 489 S.E.2d 167 (1997), "[N]o matter how many times defendant's blood is tested, the DNA results would be identical. What defendant is really objecting to is the comparison of his DNA with DNA derived from samples taken from the victims of crimes other than the one specified in the search warrant. * * * 'In this respect, DNA results are like fingerprints which are maintained on file by law enforcement authorities for use in further investigations.' " (Footnote omitted.)

**{¶ 24}** We note that numerous courts around the country have examined this issue and have reached the same conclusion that we do here—a person has no reasonable expectation of privacy in his or her DNA profile extracted from a lawfully obtained DNA sample. A defendant lacks standing to object to its use by the state in a subsequent criminal investigation. *See Herman v. State*, 122 Nev. 199, 207, 128 P.3d 469 (2006) (a DNA sample legally obtained in a criminal investigation that had no limitation on its use may be used in a subsequent investigation without implicating Fourth Amendment concerns because "[a] reasonable person would have understood that the resulting DNA profile, like fingerprints, could be available for general investigative purposes); *State v. Hauge*, 103 Hawai'i 38, 52, 79 P.3d 131 (2003) (once the authorities lawfully obtained a blood sample to test for DNA, using the test results in subsequent investigations is irrelevant to the question of whether a reasonable expectation of privacy existed); *Smith,* 744 N.E.2d at 439 ("once DNA is used to create a profile, the profile becomes the property of the Crime Lab. Thus, the defendant had no possessory or ownership interest in it"); *Washington v. State*, 653 So.2d 362, 364 (Fla.1994), ("once [blood] samples were validly obtained, albeit in an unrelated case, the police were not restrained from using the samples as evidence in the murder case"); *State v. Barkley*, 144 N.C.App. 514, 521, 551 S.E.2d 131 (2001) ("a reasonable person would have understood by the exchange [between the defendant and the arresting officer] that his blood analysis could be used generally for investigative purposes, and not exclusively for the murder investigation"); *Wilson v. State*, 132 Md.App. 510, 546, 752 A.2d 1250 (2000), quoting *Bickley v. State*, 227 Ga.App. 413, 415, 489 S.E.2d 167 (1997) (defendant's objection to the comparison of his DNA, lawfully obtained in one investigation, with sample in another investigation was not well taken, because " 'DNA results are like fingerprints which are maintained on file by law enforcement authorities for use in further investigations' "); *King*, 663 N.Y.S.2d at 614, 232 A.D.2d 111 ("once a

person's blood sample has been obtained lawfully, he can no longer assert either privacy claims or unreasonable search and seizure arguments with respect to the use of that sample").

{¶ 25} Although appellant concedes that the DNA sample was legally obtained, he argues that it is not a record made for public purposes. Appellant opines that it if were, any person would be able to access individual DNA samples obtained in a criminal investigation. Appellant contends that the privacy implications are demonstrated by the need to obtain a search warrant before obtaining a person's DNA.

{¶ 26} Appellant's argument misses the mark. First, he focuses on the privacy implications associated with the 2005 DNA sample. As discussed above, there are privacy implications with respect to appellant's DNA. However, because a search warrant was executed to obtain the DNA sample, the Fourth Amendment was satisfied. Thus, the true focus of appellant's argument is on the DNA profile that the sample yielded. But, as discussed above, it is the *profile* for which there is not a reasonable expectation of privacy. Second, the General Assembly has provided a level of confidentiality for the DNA profiles and samples. R.C. 109.573(E) states, "DNA records, DNA specimens, fingerprints, and photographs that the bureau of criminal identification and investigation receives pursuant to this section and sections 313.08, 2152.74, and 2901.07 of the Revised Code and personal identification information attached to a DNA record are not public records under section 149.43 of the Revised Code." *See also* R.C. 149.43(A)(1)(j) (DNA records stored in the DNA database pursuant to R.C. 109.573 are not public records).

{¶ 27} Appellant was not subjected to a new Fourth Amendment search and seizure when the DNA profile was used during the second criminal investigation. The state did not violate any reasonable expectation of privacy held by appellant by using the DNA profile, which was the state's own record and

which appellant took no action to have removed from CODIS after his acquittal. Because appellant does not have a reasonable expectation of privacy in the DNA profile, we conclude that appellant lacks standing to challenge its use by the state in a subsequent criminal investigation.

### B. Retention of DNA Profile

**{¶ 28}** Appellant also argues that the DNA profile should not have been retained by the state after he was acquitted of the rape charge. He contends that the state lacked the authority to retain the DNA profile and subsequently use it in the homicide investigation because he was acquitted of the 2005 rape charge. Appellant relies upon R.C. 109.573 and 2901.07 and section 17.6 of BCI's 2009 CODIS Methods Manual in support of his argument.

**{¶ 29}** Appellant is correct that R.C. 2901.07 does not support the inclusion of his profile in CODIS. However, the same cannot be said for R.C. 109.573. The superintendent of BCI is empowered to "establish and maintain a DNA database." R.C. 109.573(B)(1)(b). "DNA database" is defined in part as "a collection of DNA records from forensic casework." R.C. 109.573(A)(3). "Forensic" is defined as "[u]sed in or suitable to courts of law or public debate." *Black's Law Dictionary* 721 (9th Ed.2009). In this case, the police lawfully obtained the DNA sample in the course of the 2005 rape investigation. Therefore, the profile obtained from the sample is a record from forensic casework and is properly maintained in CODIS. Moreover, we note that neither R.C. 109.573 nor 2901.07 require that the state, on its own initiative, remove the DNA profile of a person who was acquitted at trial.

**{¶ 30}** There is no support in the CODIS Methods Manual for appellant's position. The manual has no provision for the removal of a DNA profile of an individual acquitted at trial. Section 17.6 sets forth the basis for expunging a DNA profile—a conviction being overturned on appeal or a sample taken in error—and the procedures that need to be followed. However, section 17.6 is not

10

self-executing. There is no mechanism set forth in the manual by which the state is automatically notified that a person's conviction has been overturned, requiring the profile of the acquitted person to be removed. Instead, the requirement of going forward is on the exonerated individual to notify CODIS that the conviction has been overturned and to seek expungement of the DNA profile. Appellant failed to do this.

{¶ 31} There is no legislative requirement that DNA profiles obtained from lawfully obtained DNA samples be removed from CODIS on the state's initiative when the subject of the profile is acquitted at trial, and we will not create such a requirement. "Exclusion of extremely valuable evidence in crimes that often leave little other trace is a major social cost" and "the potential for abuse in the future is not sufficiently clear to warrant adopting a rule excluding evidence from the database on the ground that it was obtained or retained beyond the authorized classifications." *Smith*, 744 N.E.2d at 442.

{¶ 32} Even if Ohio's statutory scheme required the removal of appellant's DNA profile upon his acquittal, suppression of that evidence is not appropriate. "[A] violation of a state statute, * * * in and of itself, [does not] give rise to a Fourth Amendment violation and result in the suppression of evidence." *State v. Jones*, 121 Ohio St.3d 103, 2009-Ohio-316, 902 N.E.2d 464, ¶ 15, citing *Virginia v. Moore*, 553 U.S. 164, 128 S.Ct. 1598, 170 L.Ed.2d 559 (2008). "[B]ecause of the need for consistency and bright-line standards when applying the Fourth Amendment, * * * 'it is not the province of the Fourth Amendment to enforce state law.' " *Id.* at ¶ 18, quoting *Moore* at 178. Since the General Assembly opted not to provide a remedy to a party wronged by a violation of either R.C. 109.573 or 2901.07, "we are not in the position to rectify this possible legislative oversight by elevating a violation of [these statutes] to a Fourth Amendment violation and imposing the exclusionary rule." *Id.* at ¶ 21, citing *Moore* at 178.

### III. Conclusion

**{¶ 33}** Accordingly, we conclude that a person has no reasonable expectation of privacy in his or her DNA profile extracted from a lawfully obtained DNA sample, and a defendant lacks standing to object to its use in a subsequent criminal investigation. Under these circumstances, the state is not prohibited from retaining in CODIS the DNA profile of a person acquitted of a crime and using the DNA profile in a subsequent criminal investigation. We accordingly affirm the judgment of the court of appeals.

Judgment affirmed.

O'CONNOR, C.J., and PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER, and MCGEE BROWN, JJ., concur.

_____

William D. Mason, Cuyahoga County Prosecuting Attorney, and Katherine Mullin and Brian McDonough, Assistant Prosecuting Attorneys, for appellee.

Brian Moriarty, for appellant.

Michael DeWine, Attorney General, Alexandra T. Schimmer, Solicitor General, and Michael J. Hendershot, Chief Deputy Solicitor, urging affirmance for amicus curiae, Ohio Attorney General.

_____