Pfeifer, J.,
dissenting.
{¶ 52} The arrest warrants in this case were unconstitutional because they were issued even though probable cause had not been determined. See Fourth Amendment to the United States Constitution (“no Warrants shall issue, but upon probable cause”); Article I, Section 14 of the Ohio Constitution (“no warrant shall issue, but upon probable cause”). The critical issue in this case becomes, as the majority opinion well notes, whether evidence that was obtained using the constitutionally invalid arrest warrants should be suppressed.
{¶ 53} The exclusionary rule, which suppresses evidence procured unconstitutionally, is a draconian measure potentially imbued with tremendous societal costs, including the loss of reliable evidence. United States v. Leon, 468 U.S. 897, 907, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). For that reason, “ ‘the application of *445 the [exclusionary] rule has been restricted to those areas where its remedial objectives are thought most efficaciously served.’ ” Id. at 908, quoting United States v. Calandra, 414 U.S. 338, 348, 94 S.Ct. 613, 38 L.Ed.2d 561. Accordingly, the rule is not to be applied to exclude evidence that was “ ‘obtained in the reasonable good-faith belief that a search or seizure was in accord with the Fourth Amendment.’ ” Id. at 909, quoting Illinois v. Gates, 462 U.S. 213, 255, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (White, J., concurring in judgment).
{¶ 54} These principles are based on the sound premise that the exclusionary rule is designed to deter police misconduct and, therefore, if the police obtained a warrant in objective good faith and acted within its scope, then there is “nothing to deter.” Id. at 921. Once a magistrate issues a warrant that reasonably appears to be based on a determination of probable cause, the officer is entitled to rely on it, for “ ‘there is literally nothing more the policeman can do in seeking to comply with the law.’ ” Id., quoting Stone v. Powell, 428 U.S. 465, 498, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976) (Burger, C.J., concurring). And this is because “[i]n the ordinary case, an officer cannot be expected to question the magistrate’s probable-cause determination or his judgment that the form of the warrant is technically sufficient.” Id. Alas, this is not an ordinary case.
{¶ 55} In an ordinary case, a magistrate does not testify that she has processed thousands of arrest warrants over a period of years and that just two months previously she became familiar with the term “probable cause.” The following colloquy, between the defense attorney and the magistrate from the Toledo Municipal Court, is not something that occurs in an ordinary case:
Q. And during your 17 years of swearing in criminal complaints with requests for arrest warrants, did you know what probable cause was?
A. No.
Q. Had you ever made a probable cause determination?
A. No.
Q. Did any of [your] training include making a probable cause determination?
A. No, it did not.
Q. As far as you know, as a supervisor, have any of the deputy clerks made a probable cause determination?
A. No.
*446 {¶ 56} In an ordinary case, the affidavit or complaint that an officer seeking a warrant presents to a magistrate contains information that allows the issuing magistrate to determine whether probable cause exists. In this case, each of the three complaints does little more than restate the crime that is charged. The officer who presented the complaints was questioned at the suppression hearing:
Q. You don’t make any reference to what Mr. Pittmon told you other than that he was the victim?
A. Yes, sir.
Q. Okay. You don’t make any reference to the potential existence of a video, right?
A. Correct.
Q. * * * [Y]ou are just saying Mr. Hoffman committed the offense?
A. Yes.
Q. You’re not telling anybody how you’ve come to learn that?
A. No, sir.
* * *
Q. Nobody asked you what the basis of your information was for claiming Mr. Hoffman committed these offenses?
A. No, sir.
Q. And, in fact, when you go to execute these complaints, nobody at Toledo Municipal Court, nobody ever asks you that, do they?
A. Not that I recall anytime.
* :|: *
Q. And nobody has ever said how do you know that this is true, right?
A. Right.
Q. * * * And, again, nobody is asking you how you came to know these things?
A. No, sir.
Q. And the complaint itself does not reflect how you came to know these things, right?
A. Correct.
*447 {¶ 57} These transcripts are quite extraordinary. Nothing about them strikes me as being part of an ordinary case. According to Leon, in an ordinary case, a police officer is not expected to question a magistrate’s probable-cause determination. But, in this case, there was ample reason for the police officer to question the magistrate’s ostensible probable-cause determination, because the officer presenting the complaints to obtain the warrants testified that she has never been asked to explain the basis for her belief that she had probable cause to make an arrest. So, the police officer knew that the magistrates were not exactly fastidious in requiring support for arrest warrants.
{¶ 58} The blame for these unfortunate facts should not be thrown at the magistrates. They were only following orders. Again, it is really quite extraordinary, sad really, to read the procedure that the magistrates are instructed to follow. A memo dated March 3, 2009, instructs magistrates of their duties when “Swearing in Affidavits.” It states:
When an officer or complainant brings an affidavit to the counter, you should quickly look over the affidavit for the following items:
If the officer or complainant is filing the affidavit at the counter, you may let him or her know if something is missing as a courtesy. Once the affidavit is clerked in, it cannot be altered. This means you cannot call an officer to come back if something is missing. You also must accept all affidavits even if they are not complete.
{¶ 59} Far from requiring magistrates to determine probable cause, the memo implicitly instructs the magistrates to ignore probable cause. The memo instructs magistrates to “quickly look over the affidavit.” Quickly? Since when is it important to quickly determine whether the Constitutions of the United States and of Ohio have been complied with? Even worse, though, is the last sentence quoted above. Magistrates are instructed that they “must accept all affidavits.” No wonder they are not trained to determine probable cause. That would truly be a waste of time given the mandate to accept all affidavits.
{¶ 60} If these facts were to appear in a novel by Franz Kafka or a transcript of a trial from the totalitarian era of the Soviet Bloc, it would not be extraordinary. It might even be considered a source of amusement. But we are talking about the city of Toledo in the great state of Ohio in the United States of America. Our country is considered to be governed by the rule of law, not as a police state. But the facts of this case suggest that the residents of Lucas County have been the subject of innumerable warrants that were issued as if by *448 the police department itself. The warrants were issued virtually without scrutiny, and it is inconceivable that the officers did not realize this. Certainly the officer who testified in this case was aware that her requests for warrants were not subject to questioning and that her affidavits did not need to inform the magistrate of facts that could support a finding of probable cause. And in particular, in this case, the officer seeking the warrants knew that the supporting document contained nothing that would allow a magistrate to make a probable-cause determination.
{¶ 61} There is no reason to conclude that the good-faith exception should apply to the warrants in this case. The warrant requirement exists because “the detached scrutiny of a neutral magistrate * * * is a more reliable safeguard against improper searches than the hurried judgment of a law enforcement officer * * Leon, 468 U.S. at 913-914, 104 S.Ct. 3405, 82 L.Ed.2d 677, quoting United States v. Chadwick, 433 U.S. 1, 9, 97 S.Ct. 2476, 2482, 53 L.Ed.2d 538 (1977). Deference to magistrates, however, “is not boundless,” and it is particularly unwarranted when a magistrate “ !serve[s] merely as a rubber stamp for the police.’ ” Leon at 914, quoting Aguilar v. Texas, 378 U.S. 108, 111, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).
{¶ 62} There can be no doubt about whether the magistrate in this case served as a rubber stamp. She did. She admitted it. The police officer seeking the warrants admitted it. And the instructions the magistrate followed require her to “accept all affidavits.” It is difficult to conceive of a situation better described by the term “rubber stamp.”
{¶ 63} The majority opinion rightly concludes that the warrants were issued unconstitutionally. The only issue is whether the officers who acted on the warrants can be said to have acted in good faith. Based on the facts of this case, it is abundantly clear that the officers did not so act, because the requests for warrants were “so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.” Brown v. Illinois, 422 U.S. 590, 611, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975) (Powell, J., concurring in judgment). There was nothing in the complaints except a restatement of the elements of the crime. The magistrate who issued the arrest warrants in this case was not neutral and detached. And although the magistrate did not engage in the search and arrest herself, it is quite clear that she “wholly abandoned [her] judicial role” by serving as a mere rubber stamp for the police officer seeking the warrant. Leon at 923, discussing Lo-Ji Sales, Inc. v. New York, 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979).
{¶ 64} The facts of this case, including the admission that a magistrate of the Toledo Municipal Court has issued thousands of arrest warrants without ever making a probable-cause determination, convince me that suppression of the *449 evidence in this case is necessary to deter subsequent unconstitutional behavior. Toledo police have been relying on this flagrantly unconstitutional procedure for years now. See Overton v. Ohio, 534 U.S. 982, 122 S.Ct. 389, 151 L.Ed.2d 317 (2001) (statement of Breyer, J.). A forceful message needs to be sent to deter similar misconduct, and suppression in this case would send that message.
{¶ 65} This analysis is largely based on decisions by the Supreme Court of the United States and on federal constitutional standards. But this case also implicates Article I, Section 14 of the Ohio Constitution.
The Ohio Constitution is a document of independent force. In the areas of individual rights and civil liberties, the United States Constitution, where applicable to the states, provides a floor below which state court decisions may not fall. As long as state courts provide at least as much protection as the United States Supreme Court has provided in its interpretation of the federal Bill of Rights, state courts are unrestricted in according greater civil liberties and protections to individuals and groups.
Arnold v. Cleveland, 67 Ohio St.3d 35, 616 N.E.2d 163 (1993), paragraph one of the syllabus. I have also independently analyzed the facts of this case pursuant to Article I, Section 14, and I conclude that the issuance of the warrants violated the Ohio Constitution. Although I could be persuaded that the Ohio Constitution provides greater protection than the federal Constitution in a case such as this, Hoffman has not made any such claim, and it is not necessary for this court to go beyond the Fourth Amendment to justify the result I espouse.
{¶ 66} The analysis under the Ohio Constitution is similar to the analysis under the federal standards. We have held that the protections provided by Article I, Section 14 are coextensive with those provided by the Fourth Amendment. State v. Emerson, 134 Ohio St.3d 191, 2012-Ohio-5047, 981 N.E.2d 787, ¶15. The warrants were unconstitutionally issued; therefore, the Ohio Constitution prohibits the use of any evidence procured pursuant to the warrants unless the officer seeking the warrants had a good-faith belief that the warrant was valid. For the factual reasons stated above, I conclude that the officer involved did not have a good-faith reason to believe that the requests for warrants properly presented any basis for a finding of probable cause. Accordingly, there could be no good-faith belief that the warrants were valid.
{¶ 67} I am not unmindful of the fact that evidence procured using the unconstitutionally issued arrest warrants led to Hoffman’s conviction for a heinous murder and that suppression of the evidence would make it harder to prosecute him in a new trial. But that is no reason to overlook the grave constitutional violations that occurred in this case. Accordingly, I would suppress *450 the evidence procured using the unconstitutionally issued warrants. I would reverse the judgment and remand for a new trial. I dissent.
Julia R. Bates, Lucas County Prosecuting Attorney, and Evy M. Jarrett and Frank H. Spryszak, Assistant Prosecuting Attorneys, for appellee.
David Klucas, for appellant.
Michael DeWine, Attorney General, Eric E. Murphy, State Solicitor, and Samuel C. Peterson, Deputy Solicitor, urging affirmance for amicus curiae Ohio Attorney General.
Carol Hamilton O’Brien, Delaware County Prosecuting Attorney, and Douglas N. Dumolt, Assistant Prosecuting Attorney, urging affirmance for amicus curiae Ohio Prosecuting Attorneys Association.
Timothy Young, Ohio Public Defender, Stephen P. Hardwick, Assistant Public Defender; Robert L. Tobik, Cuyahoga County Public Defender, and Jeff Gamso, Assistant Cuyahoga County Public Defender; and Matt Bangerter, urging reversal for amici curiae Office of the Ohio Public Defender, Cuyahoga County Public Defender’s Office, Ohio Association of Criminal Defense Lawyers, and Maumee Valley Criminal Defense Lawyers Association.
*451 [[Image here]]
*452 [[Image here]]
*453 [[Image here]]