[Cite as *State v Collins*, 2019-Ohio-1724.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HOCKING COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | Case No. 18CA12 |
| Plaintiff-Appellee, | : | |
| v. | : | <u>DECISION AND</u><br><u>JUDGMENT ENTRY</u> |
| MICHAEL S. COLLINS, | : | |
| Defendant-Appellant. | : | **RELEASED: 04/25/2019** |

<u>APPEARANCES</u>:

Ryan Shepler, Kernen & Shepler, L.L.C., Logan, Ohio, for appellant.

Benjamin Fickel, Hocking County Prosecuting Attorney, and Jorden M. Meadows, Hocking County Assistant Prosecuting Attorney, Logan, Ohio, for appellee.

Hess, J.

{¶1} A law enforcement officer searched Michael S. Collins and found methamphetamine and buprenorphine. Collins pleaded no contest to aggravated possession of drugs, and the Hocking County Court of Common Pleas sentenced him to community control for a period of five years.

{¶2} Collins asserts that the trial court erred in denying his motion to suppress because the officer did not have reasonable suspicion to stop and search him. However, Collins entered premises where officers were executing a search warrant, quickly left and waited on a neighboring property, and disregarded the officer's instructions to get out of his vehicle and keep his hands in plain sight. Thus, the officer was justified in detaining and searching Collins because he was within the immediate vicinity of the search site and the officer had reasonable belief that he posed a safety threat. Alternatively, the officer had a separate justification to detain and search Collins based on the officer's reasonable

suspicion that he had engaged in criminal trespass. We reject his argument and affirm his conviction.

## I. FACTS

**{¶3}** The Hocking County Grand Jury returned an indictment charging Michael S. Collins with one count of aggravated possession of drugs, a fifth-degree felony, one count of possession of drugs, a first-degree misdemeanor, and one count of resisting arrest, a second-degree misdemeanor. Collins entered a not guilty plea.

**{¶4}** Collins's counsel filed a motion to suppress the evidence seized during the search on the ground that the officer lacked reasonable suspicion to make the stop. At the suppression hearing Sheriff Deputy Dustin Robison testified that on September 29, 2016, he and several other officers were executing a search warrant at a residence and property in Hocking County. Deputy Robison was posted outside the residence and observed Collins drive up the driveway halfway, look at the officers and their cruisers, and quickly back his vehicle out of the driveway and onto the neighbor's driveway. Deputy Robison drove his cruiser to the neighboring property, parked it along the roadside and walked up to Collins's vehicle. Deputy Robison testified that he did not activate his siren or lights and was not making a traffic stop.

**{¶5}** Deputy Robison approached Collins, who was sitting in his parked vehicle with the ignition off, and asked Collins what he was doing. Deputy Robison testified that Collins was dressed in "full ghillie suit"[1] – outfits also worn by the suspects in the crime for which the search warrant had issued and who were believed to be still in the area. The

---

[1]A camouflage suit or "sniper suit" that can be customized by adding foliage and named after Ghillie Dhu, a male fairy clothed in leaves and moss in Scottish mythology. *See* Briggs, *An Encyclopedia of Fairies*, 208 (1976); *see also Bryant v. Gordon*, 483 F.Supp.2d 605, 609, fn. 2 (N.D.Ill.2007) ("The Ghillie suit was originally developed by Scottish gamekeepers as a portable hunting blind.").

owners of the property where Collins was parked were standing outside and told Deputy Robison that they did not know Collins. Deputy Robison determined that Collins was trespassing and asked Collins to step out of the vehicle. Collins refused Deputy Robison's request. Instead, Collins started his vehicle and reached down into the floorboard area. Deputy Robison testified that he called for backup and Deputy Trent Woodgeard arrived.

{¶6}   Both Deputy Robison and Deputy Woodgeard testified that when Deputy Woodgeard arrived, Collins got out of his vehicle but refused Deputy Robison's repeated orders to keep his hands in plain sight and instead put his hands down into his pants and pockets. Both officers testified that they were concerned that Collins was hiding a weapon in his pants. Collins removed part of his ghillie suit and struggled with them as they placed him under arrest and handcuffed him. They patted Collins down for weapons and discovered the drugs in a pill bottle.

{¶7}   The trial court denied Collins's motion to suppress. The court determined that because Collins had arrived on the property in the middle of the search, then left and remained in the vicinity on the neighboring property, he posed a safety concern for the officers executing the search warrant. The trial court found that Deputy Robison was free to approach Collins, observe his demeanor and question him. When Deputy Robison learned that the homeowners where Collins was parked did not know him, Deputy Robison suspected criminal trespass and was justified in taking the additional actions he did.

{¶8}   Collins withdrew his not-guilty plea, pleaded no contest to aggravated possession of drugs in return for the dismissal of the remaining charges, and was found guilty upon his plea. The trial court sentenced him to five years of community control.

## II. ASSIGNMENT OF ERROR

**{¶9}** Collins assigns the following error for our review:

1. THE TRIAL COURT ERRED IN OVERRULING MR. COLLINS'S MOTION TO SUPPRESS.

## III. STANDARD OF REVIEW

**{¶10}** In general "appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Codeluppi*, 139 Ohio St.3d 165, 2014-Ohio-1574, 10 N.E.3d 691, ¶ 7. "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. "Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id.* " 'Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.' " *Codeluppi* at ¶ 7, quoting *Burnside* at ¶ 8.

## IV. LAW AND ANALYSIS

### A. General Principles

**{¶11}** "The Fourth Amendment to the United States Constitution and the Ohio Constitution, Article I, Section 14 prohibit unreasonable searches and seizures." *State v. Emerson*, 134 Ohio St.3d 191, 2012-Ohio-5047, 981 N.E.2d 787, ¶ 15. This constitutional guarantee is protected by the exclusionary rule, which mandates the exclusion at trial of evidence obtained from an unreasonable search and seizure. *Id.*

**{¶12}** Here the trial court found Collins's stop and search justified on two grounds. First, the court found that Deputy Robison was justified as part of his efforts to secure a

safe search site because Collins arrived on the property during the search and then stayed in the vicinity, parked on the neighboring property. The trial court found that Collins's position on the neighboring property was close enough to the search site to pose a safety concern for the officers. *See Michigan v. Summers*, 452 U.S. 692, 705, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981) as limited by *Bailey v. United States*, 568 U.S. 186, 133 S.Ct. 1031, 185 L.Ed.2d 19 (2013). Second, after talking with Collins and the neighbors on whose property Collins was parked, Deputy Robison had reasonable suspicion that Collins was engaged in criminal trespassing, which provided a separate justification for his stop and pat-down of Collins. *See Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

### B. Detention Incidental to the Execution of a Search Warrant

{¶13} In *Michigan v. Summers*, 452 U.S. 692, 705, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981), the United States Supreme Court authorized law enforcement to detain occupants of a premise subject to a valid search warrant while the search was underway. Detaining such individuals serves three important objectives:  (1) prevents flight, (2) minimizes the risk of harm to officers and others, and (3) facilitates the orderly completion of the search. *Id.* at 702–03. *Summers* detention does not require a finding of probable cause so long as police have an articulable basis for suspecting criminal activity. *Id.* at 698–99. "The connection of an occupant to that home gives the police officer an easily identifiable and certain basis for determining that suspicion of criminal activity justifies a detention of that occupant." *Id.* at 703–04.

{¶14} Police officers may also intercept and detain an individual who approaches a premise while a search warrant is being executed. *United States v. Bohannon*, 225 F.3d

615, 617 (6th Cir.2000). In *Bohannon*, the court held that officers could detain individuals who arrive at the scene of a search, even if they were not inside the residence or present when police first arrived. There the officers were concluding their search and leaving the scene when a car pulled into the driveway and two individuals walked from the car toward the residence. *Id.* at 616. The officers asked them for identification and, when they engaged in nervous behavior, conducted a pat-down and found drugs. *Id.* The court found that the policies underlying *Summers*, especially officer safety, applied equally to the detention of individuals arriving at a search scene, and ruled that such a detention was not a violation of the Fourth Amendment. *Id.* at 617; *see also Burchett v. Kiefer,* 310 F.3d 937, 944 (6th Cir.2002) ("officers act within their *Summers* powers when they detain an individual who approaches a property being searched pursuant to a warrant, pauses at the property line, and flees when the officers instruct him to get down"); *United States v. Jennings*, 544 F.3d 815, 818–19 (7th Cir.2008) (detaining an individual who drove up and parked next to an apartment while it was being searched was "a logical extension of the rule of *Summers*" in order to ensure the safety of the officers engaged in the search and to protect the validity of the search itself).

{¶15} The Supreme Court narrowed the scope of the *Summers* authority in *Bailey v. United States*, 568 U.S. 186, 133 S.Ct. 1031, 185 L.Ed.2d 19 (2013). There, the Court held that detention incident to the execution of a search warrant is limited to "the immediate vicinity of the premises to be searched * * * ." *Id.* at 1042. In *Bailey,* officers preparing to execute a search warrant at the defendant's apartment observed the defendant leave the premises in a vehicle. Officers followed him for about a mile before

pulling him over. The Court found that *Summers* did not extend to a search that far away

from the place to searched:

> *Summers* recognized that a rule permitting the detention of occupants on the premises during the execution of a search warrant, even absent individualized suspicion, was reasonable and necessary in light of the law enforcement interests in conducting a safe and efficient search. Because this exception grants substantial authority to police officers to detain outside of the traditional rules of the Fourth Amendment, it must be circumscribed.
>
> A spatial constraint defined by the immediate vicinity of the premises to be searched is therefore required for detentions incident to the execution of a search warrant. The police action permitted here—the search of a residence—has a spatial dimension, and so a spatial or geographical boundary can be used to determine the area within which both the search and detention incident to that search may occur. Limiting the rule in *Summers* to the area in which an occupant poses a real threat to the safe and efficient execution of a search warrant ensures that the scope of the detention incident to a search is confined to its underlying justification. Once an occupant is beyond the immediate vicinity of the premises to be searched, the search-related law enforcement interests are diminished and the intrusiveness of the detention is more severe.

*Bailey v. United States*, 568 U.S. 186, 200–01, 133 S.Ct. 1031, 1041–42, 185 L.Ed.2d

19 (2013).

{¶16} The Court in *Bailey* determined that the defendant was detained "at a point

beyond any reasonable understanding of the immediate vicinity of the premises in

question" making *Summers* inapplicable. *Id.* at 1042. In "closer cases," trial courts are to

consider certain factors to determine whether the defendant was detained within the

"immediate vicinity," such as "the lawful limits of the premises, whether the occupant was

within the line of sight of his dwelling, the ease of reentry from the occupant's location,

and other relevant factors." *Id.; see also United States v. Price*, W.D. Mich. Case No. 1:14

CR 26, 2014 WL 12690502, *5 (June 25, 2014), *aff'd,* 841 F.3d 703 (6th Cir.2016) (finding

that a stop that "occurred only a block away" satisfied the "immediate vicinity" test of *Bailey* under the circumstances).

**{¶17}** Based on *Bailey*, we find that the trial court correctly found Collins's detention justified because Collins had entered the property during the execution of the search warrant, remained in the immediate vicinity, and posed a threat to the officers' safety. Collins's behavior gave both Deputy Robison and Deputy Woodgeard reasonable belief that he posed a threat to the officers' safety and to the safety of the neighbors standing nearby. Collins was dressed in full ghillie suit, the same outfits the suspects were wearing, and he refused to comply with Deputy Robison's request to get out of the vehicle and keep his hands in plain sight. Instead, Collins started the vehicle and reached under the floorboard. When Collins finally got out of the vehicle, he continued to disregard Deputy Robison's orders and reached into his pockets and pants. Both officers testified that they believed Collins could have a weapon in the pants of his ghillie suit. The trial court found that Collins's location on the neighboring property posed a safety risk to the officers executing the search warrant: "By remaining in the vicinity he continued to be a safety concern for the deputies." This meets the "immediate vicinity" definition discussed in *Bailey*. Thus, we find that Deputy Robison was justified in detaining Collins in his efforts to secure the site.

**{¶18}** Collins argues, without citing any supporting legal authority, that the trial court could not base its decision on the need to secure the search site because the state did not introduce the search warrant into evidence at the hearing. Collins contends that because the judge did not review the search warrant, he could not determine "the necessity of any stop and frisk of bystanders." However, Collins did not raise this objection

at the trial court level and has waived it. Crim.R. 47 states that a motion to suppress "shall state with particularity the grounds upon which it is made." The State's burden of proof in a motion to suppress hearing is limited to those contentions that are asserted with sufficient particularity to place the prosecutor and court on notice of the issues to be decided. Failure of the defendant to adequately raise the basis of his challenge constitutes a waiver of that issue on appeal. *State. v. Merryman*, 4th Dist. Athens No. 12CA28, 2013-Ohio-4810, ¶ 42-43. Our review of Collins's suppression motion reveals he did not raise a challenge to the existence, scope or validity of the property search warrant in the trial court. Instead, he argued that the officers lacked reasonable suspicion to conduct a *Terry* search. Collins did not object to the officers' testimony about the existence or scope of the warrant at the suppression hearing. Thus, neither the prosecutor nor the trial court was on notice of any need to introduce the warrant into evidence or review it.

### C. Detention based on Reasonable Suspicion under *Terry*

{¶19} The trial court found a second justification for Collins's detention and search based on reasonable suspicion under *Terry.* Even if Collins was not in the "immediate vicinity" of the place to be searched, *Bailey* recognizes that other justifications may still exist for this kind of stop:

> Detentions incident to the execution of a search warrant are reasonable under the Fourth Amendment because the limited intrusion on personal liberty is outweighed by the special law enforcement interests at stake. Once an individual has left the immediate vicinity of a premises to be searched, however, detentions must be justified by some other rationale. In this respect it must be noted that the District Court, as an alternative ruling, held that stopping petitioner was lawful under *Terry.*

*Bailey* at 202. "[W]here there are grounds to believe the departing occupant is dangerous, or involved in criminal activity, police will generally not need *Summers* to detain him at least for brief questioning, as they can rely instead on *Terry*." *Id.* at 196-197. Thus, a finding that the "immediate vicinity" exception is inapplicable does not end the inquiry. The Court "specifically left open the possibility that there could be bases, independent of the execution of a search at another location, that could justify the search." *United States v. Christian*, 39 F.Supp.3d 942, 948 (N.D.Ohio 2014) (finding that a police stop of the defendant one-tenth of a mile from the subject property *prior to* the execution of a search warrant was not justified under *Bailey*, nevertheless the vehicle was properly seized and searched on other grounds).

**{¶20}** An investigative stop, or *Terry* stop, under the Fourth Amendment allows an officer to briefly stop and temporarily detain individuals in order to investigate possible criminal activity. *State v. Staten*, 4th Dist. Athens No. 03CA1, 2003–Ohio–4592, ¶ 22, citing *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). " 'To conduct an investigatory stop, the officer must be able to point to specific and articulable facts which, taken together with rational inferences derived from those facts, give rise to a reasonable suspicion that the individual is engaged or about to be engaged in criminal activity.' " *State v. Eatmon,* 4th Dist. Scioto No. 12CA3498, 2013–Ohio–4812, ¶ 13, quoting *State v. Kilbarger,* 4th Dist. Hocking No. 11CA23, 2012–Ohio–1521, ¶ 15. " 'The propriety of an investigative stop by a police officer must be viewed in light of the totality of the surrounding circumstances.' " *Id.*, quoting *State v. Freeman,* 64 Ohio St.2d 291, 414 N.E.2d 1044 (1980), paragraph one of the syllabus.

**{¶21}** The totality of the circumstances approach "allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002), quoting *United States v. Cortez*, 449 U.S. 411, 418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). Thus, when a court reviews an officer's reasonable suspicion determination, a court must give "due weight" to factual inferences drawn by resident judges and local law enforcement officers. *Id.* at 273–274, 122 S.Ct. 744. The power to conduct a *Terry* stop does not automatically give police the power to frisk the subject for weapons. *Terry,* 392 U.S. at 27, 88 S.Ct. 1868. There must be a separate inquiry into whether the frisk was constitutional, which depends on whether the police had a reasonable belief that the person was armed and dangerous. *Terry*, 392 U.S. at 27, 88 S.Ct. 1868.

**{¶22}** A law enforcement agent may conduct a pat-down search to find weapons where the officer has reason to believe that the individual is armed and dangerous. *Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Under *Terry,* a police officer who makes a valid investigatory stop may conduct a limited pat-down of a suspect's outer clothing. But the pat-down may be conducted only if the officer has a reasonable belief that the detainee poses a threat to the officer's safety or the safety of others. The pat-down must be limited to a search for weapons. *See State v. Evans,* 67 Ohio St.3d 405, 1993-Ohio-186, 618 N.E.2d 162.

**{¶23}** Considering the totality of the circumstances, we conclude that the trial court's finding that Deputy Robinson had a reasonable suspicion of criminal activity is supported by competent, credible evidence. Deputy Robison's pat-down of Collins was

authorized under *Terry, supra.* Deputy Robison testified that as he approached Collins and asked him his name, the property owners where Collins had parked his vehicle approached Deputy Robison and told him they did not know Collins and did not know what was going on. Deputy Robison determined that Collins was engaged in criminal trespassing and told him to get out of the vehicle. Collins initially refused to get out of the vehicle, would not keep his hands in plain sight, and continued to ignore Deputy Robison's commands. Deputy Robison testified that Collins's behavior caused Deputy Robison to be concerned about his safety. The testimony of Deputy Robison established that he had a reasonable suspicion of criminal trespass activity justifying a *Terry* stop. Moreover, as we have already found, Collins's refusal to keep his hands in plain sight and his reaching into his pockets and pants justified a pat-down.

{¶24} Because Collins was in the immediate vicinity of the search site, he was properly detained and subsequently searched incidental to the execution of the search warrant as recognized under *Bailey*. As a separate justification for Collins's detention and search, law enforcement had a reasonable suspicion that Collins was engaged in criminal trespass and was justified in detaining and searching Collins under *Terry*. The trial court correctly denied his motion to suppress. We overrule Collins's assignment of error.

V. CONCLUSION

{¶25} Having overruled Collins's assignment of error, we affirm the judgment of the trial court.

JUDGMENT AFFIRMED.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Hocking County Court of Common Pleas to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. & McFarland, J.: Concur in Judgment and Opinion.


For the Court


BY: _____
        Michael D. Hess, Judge



### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**