[Cite as *State v. Dixon*, 2012-Ohio-4689.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | |
| Plaintiff-Appellee, | : | Case No. 11CA3413 |
| | : | |
| vs. | : | **Released: September 25, 2012** |
| | : | |
| TYRONE R. DIXON, | : | DECISION AND JUDGMENT |
| | : | ENTRY |
| Defendant-Appellant. | : | |

APPEARANCES:

Bryan Scott Hicks, Lebanon, Ohio, for Appellant.

Mark E. Kuhn, Scioto County Prosecutor, and Pat Apel, Assistant Scioto County
Prosecutor, Portsmouth, Ohio, for Appellee.

McFarland, J.:

{¶1} Appellant, Tyrone Dixon, appeals his conviction in the Scioto County
Court of Common Pleas after a jury found him guilty of trafficking in drugs,
possession of drugs, possessing criminal tools, possession of marihuana, and
conspiracy to traffic in drugs. The charges included major drug offender
specifications and within the vicinity of a school specifications. Dixon raises two
assignments of error, arguing 1) the trial court erred in overruling his motion to
suppress the evidence; and 2) the trial court erred in sentencing him to a mandatory
term of 20 years. In response to the Court's order, Dixon raised an additional

assignment of error, arguing Count 2 should not be a first degree felony because the verdict form did not specify the drug involved.

{¶2} Having reviewed the record, we find the trial court correctly overruled Dixon's motion to suppress the evidence and we overrule his first assignment of error. However, the trial court did incorrectly state a portion of Dixon's sentence was mandatory, when it was not, and we sustain Dixon's second assignment of error. Further, the trial court should have reduced the degree of the offense in Count 2, as the verdict form failed to specify the controlled substance involved, and we sustain Dixon's third assignment of error. Additionally, although not raised by Dixon, we sua sponte notice errors on the verdict forms for counts 8 and 9 which require us to vacate and remand Appellant's conviction on count 8, and to remand the matter on count 9, in order for the trial court to reduce the degree of the offense. Accordingly, we affirm in part and reverse in part the trial court's judgment and remand the case for proceedings consistent with this opinion.

FACTS

{¶3} On October 25, 2010, Officer Steve Timberlake was unloading items from his vehicle when an unknown male approached him. The male knew Timberlake by name and told him there were men from Detroit selling drugs out of Katherine Lansing's residence at 616 Sixth Street in Portsmouth, Ohio. The next morning, Timberlake found an anonymous note on his vehicle's windshield,

addressed to him, indicating there were "D-boys" at the house on Sixth Street, and illegal activity was occurring at another location in Portsmouth.

{¶4} Timberlake viewed the Scioto County Court of Common Pleas' website and determined Lansing was on probation. Timberlake contacted Nick Ferrara, the court's chief probation officer, and discussed the tip about Lansing. Ferrara noted Lansing's listed address was not on Sixth Street, but she had not been reporting to her probation officer and had an outstanding warrant for her arrest. Ferrara determined the 616 Sixth Street address was incorrect, as the probation department was located on Sixth Street, and 616 would have been an alleyway.

{¶5} As a result of this conversation, Timberlake began checking the police department's records for mention of Lansing. One month earlier, on September 22, 2010, a caller telephoned the police to report a burglary at 518 Sixth Street, Portsmouth, Ohio. The report identified the caller as "Catherine Lansing," the resident.

{¶6} Based upon this new information that placed Lansing at 518 Sixth Street only one month earlier, Ferrara decided it would be prudent to visit the residence and arrest Lansing. Because of Timberlake's tip that there may be as many as five additional persons present, who were allegedly selling drugs, Ferrara requested Timberlake and other officers from the Portsmouth Police Department

assist with the home search for safety reasons. Timberlake and two other officers accompanied Ferrara and two probation officers to the residence.

{¶7} Upon arriving at the residence, part of the group went to the front door, while the others covered the rear. One of the probation officers at the front door knocked and announced his presence. The officers heard scuffling inside, but no verbal response, and no one answered the door. The officers at the back then noticed one to two males approaching the second story window in a manner that indicated they were attempting to exit the window. The officers shouted this information to the others at the front of the house. At that point, Ferrara ordered one of the probation officers to breach the door.

{¶8} Upon entering the residence, the officers saw Maurice Williams descending the stairs. They escorted him to the living room without incident. Law enforcement found Daniel Pippen in the upstairs restroom and Dixon, Evan Howard, and Eric Durr in a small upstairs bedroom. The bedroom had a dresser and a mattress in it, along with a pile of money on the floor. The money totaled $3,090.

{¶9} Probation officers were unable to locate Lansing within the house, but they did find mail addressed to her at the residence, as well as a photo of her on the refrigerator. With evidence the house was Lansing's residence, the officers conducted a search for contraband.

{¶10} Law enforcement found a total of $16,803, 1,824 oxycodone pills, cocaine, heroin, marihuana, and two digital scales. Some of the pills and money were in a sock underneath a cushion on the couch. Other drugs and money were in a plastic Walmart bag by the door to the basement. Most of the marihuana was behind the dresser in the upstairs bedroom. There was additional money under the mattress in the same room. There was even money inside of a woman's shoe. Officers found the digital scales in the kitchen. After the search, Dixon attempted to claim all of the contraband as his, but when officers asked him what was his, Dixon was unable to identify all of the contraband the officers found.

{¶11} The grand jury indicted Dixon and the others within the house for trafficking in drugs, possession of drugs, trafficking in cocaine, possession of cocaine, possession of criminal tools, possession of marihuana, and conspiracy to traffic in drugs, many of which included aggravating specifications. During the jury trial, the trial court dismissed the counts relating to the cocaine, and the jury convicted Dixon of the remaining counts and found the money recovered was subject to forfeiture. The verdict forms read, in relevant part:

Count 1:    "Trafficking in Drugs/Oxycodone/Vicinity of a School/Major Drug Offender." The jury found the amount equaled or exceeded 100 times the bulk amount and was within 1,000 feet of a school.

Count 2:     "Possession of Drugs/Major Drug Offender."  The jury found

the amount equaled or exceeded 100 times the bulk amount.

Count 3:     "Trafficking in Drugs/Heroin/Within the Vicinity of a School."

The jury found the amount was equal to or greater than one

gram but less than five (5) grams, and was within 1,000 feet of

a school.

Count 4:     "Possession of Drugs/Heroin."  The jury found the amount

equaled or exceeded one gram, but was less than five grams.

Count 7:     "Trafficking in Drugs/Marijuana/Within the Vicinity of a

School."  The jury found the amount was less than 200 grams

and was within 1,000 feet of a school.

Count 8:     "Possession of Criminal Tools."  There were no findings

associated with this count.

Count 9:     "Possession of Marijuana."  The jury found the amount was less

than the bulk amount.

Count 10:    "Conspiracy to Traffic in Drugs, F2."

{¶12} The trial court sentenced Dixon to 27 years in prison.  For Count 1,

the trial court imposed a mandatory prison term of ten years.  It then imposed an

additional ten years for the major drug offender specification.  Then, upon the

prosecution's suggestion, the trial court amended Dixon's sentence for Count 1,

stating the entire 20 years was mandatory.  The aggregate sentence remained 27 years.  Dixon now appeals.

ASSIGNMENTS OF ERROR

I.      "THE COURT ERRED BY DENYING THE MOTION TO SUPPRESS."

II.     "THE COURT ERRED BY IMPOSING A MANDATORY 20 YEARS."

III.    "THE VERDICT FORMS REFLECTING DEFENDANT'S CONVICTIONS FOR POSSESSION OF DRUGS FAILED TO REFLECT EVIDENCE OF THE SUBSTANCE INVOLVED."

ASSIGNMENT OF ERROR I

A. Standard of Review

{¶13} In his first assignment of error, Dixon argues the trial court erred in overruling his motion to suppress evidence.  Specifically, Dixon contends he had a privacy interest in his personal belongings that were inside the residence, and law enforcement should have first obtained a warrant before searching them.  We disagree.

{¶14} Preliminarily, "[w]here factual issues are involved in determining a motion, the court shall state its essential findings on the record."  Crim.R. 12(F).  While the trial court made no explicit factual findings when it denied Williams'

motion to suppress, "[t]he extensive record of the suppression hearing is 'sufficient to allow full review of the suppression issues.'"  *State v. Sapp*, 105 Ohio St.3d 104, 822 N.E.2d 1239, 2004-Ohio-7008, at ¶96, quoting *State v. Waddy* (1992), 63 Ohio St.3d 424, 443, 588 N.E.2d 819; citing *State v. Brewer* (1990), 48 Ohio St.3d 50, 60, 549 N.E.2d 491.

{¶15} Generally, "'[a]ppellate review of a motion to suppress presents a mixed question of law and fact.  When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses.'"  *State v. Roberts,* 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, at ¶100, quoting *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, at ¶8, citing *State v. Mills* (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972.  "Accordingly, we defer to the trial court's findings of fact if they are supported by competent, credible evidence."  *State v. Westbrook*, 4th Dist. No. 09CA3277, 2010-Ohio-2692, at ¶16, citing *State v. Landrum* (2000), 137 Ohio App.3d 718, 722, 739 N.E.2d 1159. "Accepting those facts as true, we must independently determine whether the trial court reached the correct legal conclusion in analyzing the facts of the case." *Westbrook* at ¶16, citing *Roberts* at ¶100, citing *Burnside* at ¶8.

B. Legal Analysis

{¶16} After reviewing the record, we conclude that Dixon did not establish he had standing to assert a Fourth Amendment violation. "The rule followed by courts today with regard to standing is whether the defendant had an expectation of privacy * * * that society is prepared to recognize as reasonable. The burden is upon the defendant to prove facts sufficient to establish such an expectation." *State v. Williams* (1995), 73 Ohio St.3d 153, 166, 652 N.E.2d 721, citing *Rakas v. Illinois* (1978), 439 U.S. 128, 131, 99 S.Ct. 421, 58 L.Ed.2d 387, at fn. 1 and *State v. Steele* (1981), 2 Ohio App.3d 105, 107, 440 N.E.2d 1353. See, also, *State v. Corbin*, 6th Dist. No. WD-10-013, 2011-Ohio-3491, at ¶ 24.

{¶17} Here, although Dixon argued that he had standing to challenge the search of the residence and the items within it, he provided no evidence or testimony in support of his argument. Dixon did not own the residence or state he lived there. Dixon did not establish he was an overnight guest who could invoke the aegis of *Minnesota v. Olson* (1990), 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85, and claim he had an expectation of privacy within Lansing's residence.

{¶18} Nor did Dixon ever argue he had a possessory interest in any item within the house and a coordinating expectation of privacy that would have prevented law enforcement from searching it. Consequently, Dixon failed to establish he had standing to assert a Fourth Amendment violation and the trial

court was right to deny his motion. Accordingly, we overrule Dixon's first assignment of error.

## ASSIGNMENT OF ERROR II

### A. Standard of Review

{¶19} In his second assignment of error, Dixon argues the trial court erred in imposing a mandatory term of 20 years as part of his sentence. We agree.

{¶20} We have held an appellant may raise sentencing errors on appeal even if he did not raise them during the sentencing hearing. *State v. Boice*, 4th Dist. No. 08CA24, 2009-Ohio-1755, at ¶ 4. In addition to our jurisprudence, the General Assembly has determined defendants may appeal, as a matter right, any sentence claimed to be contrary to law. R.C. 2953.08(A)(4).

{¶21} When reviewing felony sentences, this Court follows the two-step approach the Supreme Court of Ohio outlined in *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, at ¶ 4. See *State v. Welch*, 4th Dist. No. 08CA29, 2009-Ohio-2655, at ¶ 6. "First, [we] must examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law. If this first prong is satisfied, [that is, if the sentence complies with the law,] the trial court's decision shall be reviewed under an abuse-of-discretion standard." *Kalish* at ¶ 4.

## B. Legal Analysis

{¶22} Here, Dixon focuses on the first count, where the jury convicted him of aggravated trafficking in drugs, with additional aggravating factors that the amount of oxycodone involved was more than 100 times the bulk amount, and the crime occurred within the vicinity of a school.

{¶23} Aggravated trafficking in drugs is proscribed by R.C. 2925.03(C)(1). R.C. 2925.03(C)(1)(f) provided, "[i]f the amount of the drug involved equals or exceeds one hundred times the bulk amount and regardless of whether the offense was committed in the vicinity of a school or in the vicinity of a juvenile, aggravated trafficking in drugs is a felony of the first degree, the offender is a major drug offender, and the court shall impose as a mandatory prison term the maximum prison term prescribed for a felony of the first degree and may impose an additional prison term prescribed for a major drug offender under division (D)(3)(b) of section 2929.14 of the Revised Code."  The jury found the amount of the drug exceeded 100 times the bulk amount.  Thus, Dixon was a "major drug offender" under R.C. 2925.03(C)(1)(f) and subject to a mandatory prison term of ten years for aggravated trafficking in drugs.

{¶24} The trial court also sentenced Dixon to an additional prison term of ten years for the major drug offender specification.  Dixon's contention is the trial court's statement that this additional ten-year term was mandatory was erroneous.

{¶25} R.C. 2929.14(D)(3)(b) provided, "[t]he court imposing a prison term on an offender under division (D)(3)(a) of this section may impose an additional prison term of one, two, three, four, five, six, seven, eight, nine, or ten years * * *."[1] That is, the trial court was permitted to impose an additional prison term of ten years for the major drug offender specification, but the statutory language did not make the additional prison term mandatory. Thus, it was erroneous for the trial court to label the prison term for the major drug offender specification as "mandatory."

{¶26} The distinction between mandatory and nonmandatory prison terms is important when determining whether a court may grant an offender judicial release. R.C. 2929.20(A)(1)(a) provided only eligible offenders could apply for judicial release, and "'eligible offender' means any person serving a stated prison term of ten years or less * * *." As Dixon's aggregate sentence was 27 years, he was not eligible for judicial release because his aggregate sentence was greater than ten years.

{¶27} However, Revised Code Section 2929.20 has since been amended and Dixon will eventually be eligible for judicial release, even with a prison sentence of 27 years. The General Assembly amended R.C. 2929.20(A)(1)(a) to read, "Except as provided in division (A)(1)(b) of this section, 'eligible offender' means

---

[1] R.C. 2929.14 has since been amended.

any person who, on or after April 7, 2009, is serving a stated prison term that includes one or more nonmandatory prison terms." As 17 years of Dixon's 27-year sentence are nonmandatory, Dixon is an "eligible offender." Additionally, the newly added R.C. 2929.20(C)(5) provides, "[i]f the aggregated nonmandatory prison term or terms is more than ten years, the eligible offender may file the motion not earlier than the later of the date on which the offender has served one-half of the offender's stated prison term or the date specified in division (C)(4) of this section."

{¶28} Accordingly, because the trial court incorrectly stated the ten-year prison term for Dixon's major drug offender specification was mandatory, we sustain Dixon's second assignment of error.

ASSIGNMENT OF ERROR III

A. Standard of Review

{¶29} In his third assignment of error, Dixon argues his conviction for Count 2 should not be for a felony of the first degree because the verdict form failed to specify the controlled substance involved, but instead the level of the offense should be reduced. We agree, in part.

{¶30} "[T]his Court has ruled that when a jury verdict fails to specify the drug involved, the convictions must be treated as being associated with the least serious drug for possession/trafficking (usually marijuana)." *State v. Jones*, 4th

Dist. No. 09CA1, 2010-Ohio-865, at fn. 3, citing *New* at ¶ 26, fn. 3; *Huckleberry* at

¶ 24.

## B. Legal Analysis

{¶31} As the verdict form for Count 2 fails to specify the drug possessed, we

must treat it as a finding of guilt regarding possession of the least serious drug,

marihuana.  Since there is no "bulk amount" for marihuana, the finding of "Equal

[sic] or exceeds one hundred (100) times bulk amount" is meaningless.  See R.C.

2925.01(D)(1) (excluding marihuana from the definition of "bulk amount"); R.C.

29295.11(C)(3) (delineating the penalties for possession of marihuana and

enhancing the degree of the offense based upon gram weight, not bulk amount).

{¶32} Consequently, the jury found Dixon guilty of possession of

marihuana, which is a minor misdemeanor, not a first degree felony.  R.C.

2925.11(C)(3)(a).  As such, we sustain Dixon's assignment of error in this regard.

However, because Count 2 was merged with Count 1, Dixon was not sentenced on

Count 2.  "A conviction consists of a finding of guilt and a sentence."  *State v.*

*Fields*, 1st Dist. No. C-090648, 2010-Ohio-4114, ¶ 7, citing *State v. Henderson*, 58

Ohio St.2d 171, 177-179, 389 N.E.2d 494 (1979); *State v. Obstaint*, 1st Dist. No. C-

060629, 2007-Ohio-2661, ¶ 24; accord *State v. Whitfield*, 124 Ohio St.3d 319,

2010-Ohio-2, 922 N.E.2d 182, ¶ 12.  Because Dixon was not sentenced on Count

2, there is no conviction on Count 2 to vacate.  Thus, any error related to the

verdict form is harmless. Nevertheless, because this matter is already being remanded on several other issues, the trial court is instructed to reduce the degree of offense on Count 2 consistent with this opinion.

**{¶33}** Additionally, although not raised by Dixon, we sua sponte notice errors on the verdict forms for Counts 8 and 9. As such, we have decided to sua sponte invoke the "plain error" rule. Crim.R. 52(B) states that although a defendant may have failed to raise a timely objection to an error affecting a substantial right, courts may notice the error.

**{¶34}** For a reviewing court to find plain error: 1.) there must be an error, i.e., "a deviation from a legal rule"; 2.) the error must be plain, i.e., "an 'obvious' defect in the trial proceedings"; and 3.) the error must have affected "substantial rights," i.e., it must have affected the outcome of the proceedings. *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002). Furthermore, the Supreme Court of Ohio has admonished courts that notice of plain error under Crim.R. 52(B) is to be taken " 'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.' " Id., quoting *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

**{¶35}** With regard to Count 8, possessing criminal tools, R.C. 2923.24(A) provides, "No person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally."

Whoever violates that section is guilty of possessing criminal tools. R.C. 2923.24(C). Possessing criminal tools is a misdemeanor of the first degree unless the circumstances indicate the item involved was intended for use in the commission of a felony; then possessing criminal tools is a felony of the fifth degree. *Id*.

{¶36} Here, the jury made no finding of the aggravating factor that the scales, the criminal tools, were intended for use in the commission of a felony. Thus, the verdict form was devoid of the level of the offense findings or aggravating factors and constitutes a finding of guilt of the least degree of the offense charged: a first degree misdemeanor. Accordingly, we hereby vacate Dixon's conviction for Count 8, as well as the twelve month sentence imposed by the trial court on this count.

{¶37} Further, with regard to Count 9, possession of marihuana, the verdict form for Count 9 stated the jury had found Dixon guilty of "Count 9 Possession of Marijuana," and made the specific finding of "Less than bulk amount." There is, however, no bulk amount for marihuana. See R.C. 2925.01(D)(1) (excluding marihuana from the definition of "bulk amount"). Further, when determining the appropriate penalty for possession of marihuana, R.C. 2925.11(C)(3) refers to the gram weight of the substance involved, not a bulk amount. Thus, the jury's finding that Dixon was guilty of possession of marihuana constitutes a finding of the least

degree of the offense; a minor misdemeanor.  However, as we concluded in our analysis of Count 2, because Count 9 was merged with Count 7, Dixon was not sentenced on Count 9 and thus, there is no conviction to vacate.  *Obstaint*, supra, at ¶ 24.

{¶37} In rendering our decision, we are mindful of the recent holding by the Supreme Court of Ohio in *State v. Eafford*, -- N.E.2d --, 2012-Ohio-2224, wherein the Court held that a jury-verdict form finding an accused guilty of possession of drugs "as charged in * * * the indictment" supported a conviction for possession of cocaine, even though the jury-verdict form failed to specify cocaine.  While, at first blush, it appears that the reasoning of *Eafford* does not require the specific language that we found lacking, sub judice, upon closer review we find *Eafford* to be factually distinguishable.  Specifically, we note that in *Eafford*, the verdict form at issue at least contained the phrase "as charged in the indictment," which in fact specified cocaine.  Here, the verdict forms contained no such clause.  As such, in the absence of specifying the degree of the offenses, or setting forth the aggravating factors that serve as the basis for enhancing the offenses, we find the verdict forms to be distinguishable from those in *Eafford*, and therefore find the reasoning of that case to be inapplicable herein.

{¶38} Accordingly, we remand the case to the trial court to 1) impose a conviction for the correct level of the offense as to count 8; 2) to reduce the degree

of offenses as to Counts 2 and 9, which were merged with Counts 1 and 7 for purposes of sentencing: and 3) to sentence Dixon accordingly, also taking into consideration that the major drug offender specification does not require an additional mandatory sentence.

**JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND CAUSE REMANDED.**

Kline, J., dissenting, in part.

{¶39} I concur in judgment only with the following exceptions.  First, I would not vacate Count 8.  Here, the trial court instructed the jury as follows: "Before you can find the individual Defendant[] * * * guilty, you must find beyond a reasonable doubt that * * * the individual Defendant * * * had under his control a device or instrument, to wit, digital scales, with *purpose to use it criminally for the commission of a felony.*" (Emphasis added.)  Transcript at 923.  Therefore, based on the presumption that the jury followed the trial court's instruction, I would not recognize plain error as to Count 8.  *See State v. Eafford*, 132 Ohio St.3d 159, 2012-Ohio-2224, 970 N.E.2d 891, ¶¶ 11, 17.  Furthermore, I believe that Counts 2 and 9 are moot.  Therefore, I would not address these counts.

{¶40} Accordingly, I respectfully dissent as to Counts 2, 8, and 9.  I respectfully concur in judgment only with the rest of the opinion.

# **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED IN PART, REVERSED IN PART, AND CAUSE REMANDED and that the Appellee and Appellant split costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.

Abele, P.J.: Concurs in Judgment and Opinion.
Kline, J.: Dissents in Part with Opinion as to A/E's 2, 8, & 9 and with remainder of Opinion Concurs in Judgment Only.
                              For the Court,


BY:      _____
                  Matthew W. McFarland, Judge


**NOTICE TO COUNSEL**


**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**