[Cite as *State v. Tolbert*, 2015-Ohio-4733.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
WASHINGTON COUNTY

STATE OF OHIO,                    :         Case No. 15CA5

    Plaintiff-Appellee,          :

    v.                           :         <u>DECISION AND</u>
<u>JUDGMENT ENTRY</u>

DLONTAE TOLBERT,                  :

    Defendant-Appellant.         :         **RELEASED: 11/12/2015**

---

<u>APPEARANCES:</u>

Angela Wilson Miller, Jupiter, Florida, for appellant.

James E. Schneider, Washington County Prosecuting Attorney, and Nicole Tipton Coil, Washington County Assistant Prosecuting Attorney, Marietta, Ohio, for appellee.

Harsha, J.

{¶1}   Following a bench trial the court convicted Dlontae Tolbert of trafficking in drugs (heroin) and possession of drugs (heroin), merged the convictions as allied offenses of similar import, and sentenced him on the drug-possession conviction to a three-year prison term.

{¶2}   Tolbert asserts that his trial counsel provided ineffective assistance by failing to argue that a search warrant was invalid because it was issued by a probate judge.  At the time the search warrant was issued, controlling precedent from our court authorized that procedure. Thus, trial counsel's failure to raise this objection in his motion to suppress did not constitute deficient performance.  Moreover, because the uncontroverted evidence introduced at the suppression hearing established that the deputies executing the search warrant acted in reasonable good-faith reliance on the

warrant, Tolbert cannot prove that he was prejudiced by his trial counsel's failure to raise this issue in his motion to suppress.

{¶3}   Next Tolbert contends that the trial court violated his rights to due process and a fair trial because it failed to sua sponte notify the parties of the error in the probate judge issuing the search warrant.  This assertion is also meritless because the trial court would have been guided by both our then existing precedent and the applicability of the good-faith exception to the warrant requirement.

{¶4}   Tolbert also argues that the trial court erred in denying his motion to suppress related testimony and videotaped footage taken from a pole camera that purportedly violated his constitutional rights.  However, Tolbert failed to establish at the suppression hearing that he had standing to object to the search of the property.  He supports his claim that he had standing as a guest at the premises with trial testimony, but the trial court's ruling was based on the evidence at the suppression hearing.  There Tolbert submitted no evidence on this issue so he failed to bear his burden of proving standing to object to the search warrant.

{¶5}   Finally, Tolbert contends that the state failed to introduce sufficient evidence to support his convictions for drug trafficking and drug possession.  Asia Peterson testified that at the request of Tolbert and his brother, she transported heroin from Cleveland to Marietta, where Tolbert packaged it for distribution and sold it.  She further alerted officers to where they could locate Tolbert's heroin, including in a pickle jar and a coffee container buried outside and in one of his boots in the premises that was the subject of the search warrant.  Tolbert attacks Peterson's credibility because she agreed to testify against him in return for the dismissal of charges against her.

However, in a challenge to the sufficiency of the evidence, questions of credibility and the weight to be assigned to the evidence are not at issue and are reserved for the trier of fact. Our role is restricted to determine whether after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of trafficking in drugs and drug possession proven beyond a reasonable doubt. The state's evidence clearly passed this test because of Peterson's testimony and the recovered drugs.

{¶6}    Therefore, we affirm the judgment of the trial court.

## I. FACTS

{¶7}    The Washington County Grand Jury returned an indictment charging D'Lontae Tolbert and Asia Peterson with one count of trafficking in drugs (heroin) and one count of possession of drugs (heroin).  Tolbert entered a not guilty plea to the charges and received appointed counsel.  After the trial court granted Tolbert's motion to sever the cases against him and Peterson for trial, Tolbert waived his right to a jury trial.

{¶8}    Just a few days before the scheduled trial date, Tolbert filed a motion to suppress evidence seized by deputies pursuant to a search warrant for the home located at 2460 Pleasant Ridge Road, Marietta, Ohio. He argues suppression was required because the warrant was based on: (1) information supplied by a confidential informant that did not provide the requisite probable cause, and (2) footage from a surveillance camera installed on a utility pole on the premises, which constituted an illegal warrantless search.  The motion did not indicate that Tolbert had an interest in or was a resident of the home and property being searched.  Tolbert also filed a motion in

limine to exclude the state's use of the surveillance footage because of unexplained missing minutes in the approximate ten days of videotape that were not preserved.

{¶9}    At the hearing on Tolbert's motions his counsel argued the evidence obtained by the execution of the search warrant at the Marietta home should be suppressed because although the confidential informant gave detailed firsthand information about drug activity in the Macksburg, Ohio home of Hill Franklin Smith, the source did not indicate sufficient information about drug activity at the Marietta home. He also argued that the installation and use of a video surveillance camera on a utility pole located on the Marietta property of Nissa Keagy and Dean Griffin violated their expectation of privacy.  He did not claim that Tolbert was living at the Marietta home at the time of the search, and Tolbert did not introduce any evidence—testimonial or otherwise—at the hearing in support of his motions to suppress and in limine.

{¶10}  The state presented evidence of three witnesses—two Washington County deputy sheriffs and one computer expert—as well as the search warrant issued by the Washington County Probate Judge. That warrant authorized law enforcement to search the residence premises of Keagy and Griffin, including the curtilage and multiple buildings on the property at 2460 Pleasant Ridge Road, Marietta, and seize heroin, cash, and other evidence of drug abuse and trafficking.  In support of the warrant Deputy Sheriff Joshua Staats provided an affidavit that proclaimed (1) he had been conducting an investigation into drug trafficking by Hill Franklin Smith, (2) he received information from a confidential informant that Smith was selling large amounts of heroin that was being supplied by a black male and female from Detroit who stayed with Griffin at his place in Marietta, (3) they had the local utility company install a video camera to

conduct surveillance at the Marietta residence of Keagy and Griffin, (4) the footage from the surveillance camera showed Griffin, Keagy, a black male and female, and several vehicles coming and going from the residence, and (5) the camera showed the black male walking outside the residence and talking on his cellphone.

{¶11}  Deputy Sheriff Staats testified that he prepared the affidavit and received the search warrant and that he discussed the facts set forth in his affidavit with the prosecutor's office beforehand.  According to his testimony at the pretrial hearing, Deputy Sheriff Staats believed that his affidavit demonstrated probable cause to search the property of Keagy and Griffin and that the warrant was valid when it was issued.

{¶12}  After the hearing the state filed a written response in which it argued that Tolbert had failed to claim or prove that he had legal standing to raise objections to the search and seizure of evidence at Keagy and Griffin's residence.  After Tolbert filed a reply, the trial court denied his motions to suppress and in limine.  On the motion to suppress, the trial court concluded that Tolbert "did not have standing to raise an issue about the execution of a search warrant, and did not have standing to object to the installation and use of a video camera at that residence."  The court further concluded that even assuming he had standing, the search warrant was supported by probable cause and that the video camera conducting surveillance of the residence was affixed to the pole by the electric company, that the pole was not located on a private driveway, and that the area viewed by the camera could also be viewed by law enforcement at different areas of a nearby township road.

{¶13}  A subsequent bench trial produced the following evidence.  In the spring of 2014, the county sheriff's office investigated drug activity at Hill Franklin Smith's

home in Macksburg, Ohio, and at Nissa Keagy's home on Pleasant Ridge Road in Marietta. Through information provided by confidential informants and video surveillance, law enforcement learned that Smith was being supplied with heroin from a black male and female from Detroit who were staying at Keagy's Marietta residence. On June 12, 2014, they obtained search warrants for the Marietta and Macksburg properties, and they executed them.

{¶14} When the deputies executed the search warrant of the Marietta home, neither Keagy nor Griffin were present, but they found a black male and female, Tolbert and Asia Peterson, there. Tolbert identified himself to the deputies as Tyrone Jackson, but Peterson informed them of his real name and in one of the bedrooms the deputies found a bag containing clothes, his driver's license, and social security card disclosing his true identity. When officers asked Peterson where the heroin was, she informed them where it was buried outside the residence in a pickle jar underneath some stones, dirt, and leaves just outside the back bedroom window and in a coffee container buried about 100 feet down a road from the residence, as well as in a boot in the back bedroom. The pickle jar contained 6.33 grams of heroin in seven small bags, the boot contained 2.68 grams of heroin in three small bags, and the coffee container had 61.15 grams of heroin and $5,950 in cash. The path leading to the buried coffee container contained treadmarks consistent with the boots located in the back bedroom and video surveillance footage showed a black male with dark colored boots walk a similar path away from the residence.

{¶15} According to Peterson she met and lived with Tolbert in Detroit for several months; upon Tolbert's suggestion, they moved to Marietta to transport and sell drugs

for him and his brother.  They stayed at Keagy's and Griffin's residence, which acted as a "trap house" for Tolbert's drug operations.  They initially were going to live in a trailer on the property, but because it was not habitable, they ended up staying in a bedroom in the house.  Their stay there was supposed to be temporary and they were a couple weeks away from going back to Detroit when the police executed the search warrant. During their time in Washington County, Peterson travelled back to Detroit about five times to get more heroin to sell and to Columbus two times to deliver proceeds from heroin sales to Tolbert's brother.

{¶16}  Peterson testified that Tolbert was responsible for the heroin she delivered from Detroit and that in Marietta, Tolbert packaged the heroin for distribution and sold it. She further testified that Tolbert buried heroin on Keagy's and Griffin's property because he was afraid of a police raid and did not want Griffin, a heavy heroin user, to take it. Peterson also identified the boots the police seized as Tolbert's and that she saw Tolbert put the heroin in his boot, where the deputies found it.  On cross-examination Peterson conceded that she had reached a plea deal in which she agreed to testify against Tolbert, Keagy, and Griffin in return for the dismissal of the charges against her.

{¶17}  Tolbert testified that he travelled with Peterson, who was a prostitute, because he was homeless.  He said that he did not stay at Keagy's and Griffin's Marietta residence every night when he was in the area because he would often stay with random men and women he met.  On the date the search warrant was executed, Tolbert had left the Marietta premises with a woman named Kayla and told Peterson he would not be back until the next day, but he "popped back up out of nowhere."

{¶18} Tolbert denied using or selling drugs, although he knew that other people in the house used drugs, and he also denied knowing about the heroin and cash buried in the back yard of the Marietta property. He additionally denied owning the boots seized by the police. Tolbert admitted that he appeared on the video surveillance walking back towards the area where the coffee container with the heroin and money was located, but claimed that he had simply walked to that area to make private phone calls to transsexual friends.

{¶19} At the conclusion of the trial the court found him guilty of both charges, determined that they were allied offenses of similar import, merged them, and sentenced Tolbert to three years imprisonment and five years of postrelease control on the drug possession conviction.

{¶20} This appeal followed.

## II. ASSIGNMENTS OF ERROR

{¶21} Tolbert assigns the following errors for review:

I. THE DEFENDANT'S RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL IS VIOLATED WHEN COUNSEL FAILS TO ARGUE IN HIS MOTION TO SUPPRESS THAT THE SEARCH WARRANT WAS ISSUED BY A PROBATE JUDGE AND, THEREFORE, VOID. U.S. CONST. AMENDS. V, VI, XIV; OHIO CONST. ART. I, §§ 2, 10 AND 16; R.C. 2933.21.

II. APPELLANT TOLBERT'S RIGHTS TO DUE PROCESS AND A FAIR TRIAL WERE VIOLATED BY THE COURT'S DENIAL OF A MOTION TO SUPPRESS WHERE THE SEARCH WARRANT WAS ISSUED BY A PROBATE JUDGE. U.S. CONST. AMENDS. V, VI, AND XIV; OHIO CONST. ART. 1, §§ 5 AND 16; R.C. 2933.21.

III. THE TRIAL COURT ERRED IN DENYING APPELLANT TOLBERT'S MOTION TO SUPPRESS VIDEO FOOTAGE AND ANY TESTIMONY REFERENCING THE FOOTAGE AS THE POLE CAMERA THAT WAS USED TO OBTAIN IT WAS DONE SO IN VIOLATION OF TOLBERT'S CONSTITUTIONAL RIGHTS.

IV. DUE PROCESS PERMITS CONVICTIONS ONLY UPON PROOF BEYOND A REASONABLE DOUBT.  THE STATE FAILED TO INTRODUCE SUFFICIENT EVIDENCE UPON WHICH TO PREMISE CONVICTIONS FOR TRAFFICKING AND POSSESSION.  TOLBERT WAS DEPRIVED OF DUE PROCESS AS GUARANTEED BY THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS AS WELL AS ARTICLE I, §§ 2, 9, 10 AND 16 OF THE OHIO CONSTITUTION.

## III. LAW AND ANALYSIS

### A.  Validity of Search Warrant Issued by Probate Judge

{¶22}   In his first assignment of error Tolbert asserts that his trial counsel provided ineffective assistance by failing to argue that the search warrant executed at the Marietta residence of Nissa Keagy and Dean Griffin was invalid because it was issued by a probate judge.

{¶23}   To prevail on a claim of ineffective assistance of counsel, a criminal defendant must establish (1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.  *State v. Short*, 129 Ohio St.3d 360, 2011–Ohio–3641, 952 N.E.2d 1121, ¶ 113; *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  Failure to establish either part of the test is fatal to an ineffective-assistance claim.  *Strickland* at 697, 104 S.Ct. 2052; *State v. Bradley*, 42 Ohio St.3d 136, 143, 538 N.E.2d 373 (1989).

{¶24}   In assessing counsel's performance, "an objective review of counsel's performance must be conducted in light of professional norms prevailing when the representation took place."  *State v. Herring*, 142 Ohio St.3d 165, 2014-Ohio-5228, 28 N.E.3d 1217, ¶ 68, citing *Bobby v. Van Hook*, 558 U.S. 4, 7, 130 S.Ct. 13, 175 L.Ed.2d

255 (2009); *Strickland* at 688, 104 S.Ct. 2052.  "Under the deficient-performance prong, the court should 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' "  *Herring* at ¶ 68, quoting *Strickland* at 689, 104 S.Ct. 2052.

**{¶25}** At the time that his trial counsel sought to suppress the evidence seized under a search warrant issued by the probate judge, precedent in our appellate district permitted this procedure.  In *State v. Johnston*, 4th Dist. Hocking No. 412, 1986 WL 8799, *16 (Aug 6, 1986), reversed in part on other grounds, 39 Ohio St.3d 48, 529 N.E.2d 898 (1988), we rejected a criminal defendant's assignment of error claiming that the trial court erred in overruling his motion to suppress evidence because the search warrants were issued by a probate judge:

> Appellant's first argument is that the Probate Judge acted outside his jurisdiction in hearing the state's request and issuing the warrants. R.C. 2933.21 provides for the issuance of warrants by "a judge of a court of record."  A probate judge is a judge of a court of record, the court of common pleas, of which his court is a division. R.C. 2101.01, *State v. Cotton* (1978), 56 Ohio St.2d 8.  But R.C. 2931.01 provides that
>
> "(B) 'Judge' does not include the probate judge" and
>
> "(C) 'Court' does not include the probate court."
>
> Appellant interprets this section as prohibiting a probate division judge from issuing a search warrant.
>
> We find no Ohio court has addressed appellant's claim that a probate judge may not issue a search warrant.  When we consider the history of the Ohio judiciary system, we conclude that R.C. 2931.01(B) and (C) are merely relics from a past in which the probate courts were separate courts, not of record, with specific limited jurisdiction.  The use of the phrase "judge of a court of record" in R.C. 2933.21 and Crim.R. 41 is sufficiently specific to supersede the general definition of "judge" and "court" in R.C. 2931.01 under the rules of construction codified at R.C.

1.12 and 1.51.  Thus any judge of any court of record has authority to issue a search warrant.

**{¶26}**  *Johnston* remained binding precedent in this appellate district until 2015, when the Supreme Court of Ohio in *State v. Brown*, 142 Ohio St.3d 92, 2015-Ohio-486, 28 N.E.3d 81, considered the state's appeal from a 2-1 2013 decision by the Fifth District Court of Appeals that held otherwise.  In *Brown* at ¶ 10, the Supreme Court held that based on the plain language of R.C. 2931.01, "unless appointed by the chief justice pursuant to Article IV, Section 5(A)(3) of the Ohio Constitution [to temporarily sit or hold court in the general division of the common pleas court], a probate judge does not have authority to issue search warrants in criminal matters."

**{¶27}**  However, Tolbert's reliance on *Brown* is misplaced.  His trial counsel did not have the benefit of that 2015 decision when he filed his suppression motion and the trial court ruled on it in 2014.  Counsel's performance must be gauged "when the representation took place." *Herring*, 142 Ohio St.3d 165, 2014-Ohio-5228, 28 N.E.3d 1217, at ¶ 68. And the applicable precedent at that time was this court's holding in *Johnston*, which interpreted the provisions to allow probate judges to issue search warrants in criminal cases. Thus, counsel's failure to raise what at the time was a meritless objection was not deficient.  That is, " '[i]t is not ineffective assistance for a trial lawyer to maneuver within the existing law, declining to present untested * * * legal theories.' " *State v. Osie*, 140 Ohio St.3d 131, 2014-Ohio-2966, 16 N.E.3d 588, ¶ 219, quoting *State v. McNeill*, 83 Ohio St.3d 438, 449, 700 N.E.2d 596 (1998).  The objection that Tolbert claims that his trial counsel should have raised was not merely untested—it had been tested in our appellate jurisdiction and rejected.

**{¶28}**  Moreover, even assuming that his trial counsel's failure to raise this objection constituted deficient performance, Tolbert cannot establish that he suffered prejudice, i.e., a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.  The exclusionary rule does not apply to bar evidence obtained by officers acting in reasonable good-faith reliance on a search warrant issued by a detached and neutral magistrate that is ultimately found to be unlawful.  *Brown* at ¶ 12, citing *United States v. Leon*, 468 U.S. 897, 909-925, 104 S.Ct. 3405, 82 L.Ed.2d 577 (1984).

**{¶29}**  In *Brown* the Supreme Court of Ohio agreed with the appellate court's determination that although the search warrants issued by the probate judge were unlawful, the good-faith exception to the exclusionary rule applied to the evidence obtained by officers under the illegal warrants.  *Id.* at ¶ 11-12.  To qualify for this exception an officer's reliance on the warrant must be objectively reasonable. *State v. Castagnola,* __Ohio St.3d.__, 2015-Ohio-1565, __N.E.3d__, ¶ 98. Deputy Sheriff Staats testified at the suppression hearing he consulted with the office of the prosecuting attorney before requesting the warrants.  And as the underlying court of appeals decision in *Brown* indicated, there existed a "litany of appellate cases demonstrating the common practice of probate division judges issuing search warrants throughout the State of Ohio."  *See State v. Brown*, 2013-Ohio-2224, 992 N.E.2d 1172, ¶ 37 (5th Dist.), and cases cited there. Therefore, Staats's subjective belief that the warrant was valid was also objectively reasonable. Under our facts, Tolbert would not have been entitled to suppression of the evidence seized pursuant to the search warrant even if he had

raised this objection to the warrant because the good-faith exception to the exclusionary rule applied.

{¶30}  Because Tolbert has not established either of the necessary requirements for his ineffective-assistance claim, we overrule his first assignment of error.

{¶31}  In his second assignment of error Tolbert contends that the trial court violated his rights to due process and a fair trial because it failed to sua sponte notify the parties of the error caused by the probate judge issuing the search warrant.  This contention is also meritless because the trial court would have been guided by our controlling precedent in *Johnston* and the application of the good-faith exception to the exclusionary rule would have rendered any error in this regard harmless.  We overrule Tolbert's second assignment of error.

B.  Standing to Challenge the Search

{¶32}  In his third assignment of error Tolbert argues that the trial court erred in denying his motion to suppress videotaped footage and testimony concerning the footage, which was taken from a pole camera on Nissa Keagy's and Dean Griffin's residential property.

{¶33}  Appellate review of a trial court's decision on a motion to suppress raises a mixed question of law and fact.  *State v. Hobbs*, 133 Ohio St.3d 43, 2012-Ohio-3886, 975 N.E.2d 965, ¶ 6.  Because the trial court acts as the trier of fact in suppression hearings and is in the best position to resolve factual issues and evaluate the credibility of witnesses, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence.  *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.  Accepting these facts as true, we must then

"independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Hobbs* at ¶ 8, citing *Burnside* at ¶ 8.

**{¶34}** "The Fourth Amendment to the United States Constitution and the Ohio Constitution, Article I, Section 14, prohibit unreasonable searches and seizures." *State v. Emerson*, 134 Ohio St.3d 191, 2012-Ohio-5047, 981 N.E.2d 787, ¶ 15. This constitutional guarantee is protected by the exclusionary rule, which mandates exclusion of the evidence obtained from the unreasonable search and seizure at trial. *Id.*

**{¶35}** The trial court denied Tolbert's motion to suppress the video surveillance footage and related testimony because he lacked standing to challenge the purported warrantless search of Keagy's and Griffin's residential premises. "Fourth Amendment rights are personal in nature and may not be vicariously asserted by others." *State v. Horsley*, 4th Dist. Scioto No. 12CA3473, 2013-Ohio-901, ¶ 12, citing *Rakas v. Illinois*, 439 U.S. 128, 133-134, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). " 'The rule followed by courts today with regard to standing is whether the defendant had an expectation of privacy * * * that society is prepared to recognize as reasonable.' " *State v. Dixon*, 4th Dist. Scioto No. 11CA3413, 2012-Ohio-4689, ¶ 16, quoting *State v. Williams*, 73 Ohio St.3d 153, 166, 652 N.E.2d 721 (1995).

**{¶36}** It is well settled that " '[a] person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed.' " *Horsley* at ¶ 12, quoting *Rakas* at 134, 99 S.Ct. 421. Nevertheless, a defendant's status as an overnight guest at the time of the search is sufficient to show

that he had a reasonable expectation of privacy in his host's home.  *Minnesota v. Olson*, 495 U.S. 91, 96-97, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990).

{¶37}  "The defendant bears the burden of demonstrating that he possessed 'a legitimate expectation of privacy' in the place searched or the item seized."  *Horsley* at ¶ 13, citing *State v. Dennis*, 79 Ohio St.3d 421, 426, 683 N.E.2d 1096 (1997). Consequently, the burden is on the defendant to establish standing.  *Dixon* at ¶ 16, quoting *Williams* at 166, 652 N.E.2d 721; Katz, *Baldwin's Ohio Arrest, Search and Seizure*, Section 27:3 (2015) ("before a court may review the reasonableness of police behavior, the defendant must be able to demonstrate that his Fourth Amendment right to privacy was violated.  A defendant has the burden of proving standing").

{¶38}  Tolbert asserts on appeal that the evidence established that he had standing to object to the video surveillance of Keagy's and Griffin's home because he was a guest who stayed at the home.  But at the suppression hearing Tolbert did not introduce any evidence that he was a guest at the home; in fact, he did not introduce any testimonial or documentary evidence whatsoever.

{¶39}  On appeal Tolbert cites evidence from the bench trial to support his claim that the trial court erred in determining he lacked standing to object to the state's search of Keagy's and Griffin's residence.  The state refers to the same source.  They are both mistaken.  " '[I]n reviewing a trial court's ruling on a motion to suppress, an appellate court may consider only evidence that was presented during the suppression hearing and may not consider evidence presented at trial.' "  *State v. Gartrell*, 2014-Ohio-5203, 24 N.E.3d 680, fn. 2 (3d Dist.), quoting *State v. Monford*, 190 Ohio App.3d 35, 2010-Ohio-4732, 940 N.E.2d 634, ¶ 45 (10th Dist.).

**{¶40}** Because Tolbert did not introduce evidence at the suppression hearing supporting his claim of standing to assert a challenge to the search, the trial court did not err in overruling his motion.[1] *See Dixon*, 2012-Ohio-4689, at ¶ 7-8, where we rejected a similar argument because the defendant provided no evidence or testimony at the suppression hearing in support of his argument that he had standing.

**{¶41}** We overrule Tolbert's third assignment of error.

## C. Sufficiency of the Evidence

**{¶42}** In his fourth assignment of error Tolbert asserts that the state failed to introduce sufficient evidence to support his convictions for drug trafficking and drug possession. The standard when testing the sufficiency of the evidence is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Beverly*, 143 Ohio St.3d 258, 2015-Ohio-219, 37 N.E.3d 116, ¶ 15; *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. That analysis does not include a weighing of the evidence or witness credibility. *See State v. Hurt*, 4th Dist. Gallia Nos. 11CA12 and 11CA13, 2013-Ohio-615, ¶ 14.

**{¶43}** Asia Peterson testified that at the request of Tolbert and his brother, she transported heroin from Cleveland to Marietta, where Tolbert packaged it for distribution and sold it. Peterson further testified that Tolbert buried heroin on the property because

---

[1] We acknowledge that in his reply to the state's response to his motion to suppress, which was filed after the hearing on his pretrial motions, Tolbert attached a copy of what he claimed was preliminary hearing testimony of one of the police officers to support his claim of standing. There is no indication, however, that the trial court credited this belated evidence, and there is no argument by Tolbert on appeal that the trial court erred in failing to consider it. Therefore, we do not address it.

he was fearful of a police search, and she alerted them to where he hid it. Following her guidance, the deputies seized three stacks of heroin. And Tolbert identified himself as the black male on video surveillance who walked on the property to the general area where the coffee container containing the cash and heroin was located.

**{¶44}** Although Tolbert attacks Peterson's credibility because she agreed to testify against him in return for the dismissal of charges against her, we must "defer to the trier of fact on questions of credibility and the weight assigned to the evidence." *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, 15 N.E.3d 818, ¶ 132. That is, " 'the weight to be given the evidence and the credibility are primarily for the trier of the facts.' " *State v. Pickens*, 141 Ohio St.3d 462, 2014-Ohio-5445, 25 N.E.2d 1023, ¶ 180, quoting *State v. DeHass*, 10 Ohio St2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. Such an analysis plays no part in a challenge to the sufficiency of the evidence. *Hurt* at ¶ 14.

**{¶45}** Consequently, the trial court was free to find Peterson's testimony credible, and after viewing the evidence in a light most favorable to the state, any rational trier of fact could have found that it established the essential elements of the drug trafficking and drug possession offenses. We overrule Tolbert's fourth assignment of error.

IV. CONCLUSION

**{¶46}** Because Tolbert failed to establish that the trial court committed prejudicial error, we affirm the judgment of the trial court.

JUDGMENT AFFIRMED.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Washington County Court of Common Pleas to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. & McFarland, A.J.: Concur in Judgment and Opinion.


For the Court


BY: _____
     William H. Harsha, Judge



**NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**