[Cite as *State v. Dorsey*, 2019-Ohio-3478.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

STATE OF OHIO, :

    Plaintiff-Appellant, : Case No. 19CA3874

vs. :

TYLI DORSEY, : DECISION AND JUDGMENT ENTRY

    Defendant-Appellee. :

_____

APPEARANCES:

Shane A. Tieman, Scioto County Prosecuting Attorney, and Pat Apel, Scioto County Assistant Prosecuting Attorney, Portsmouth, Ohio, for appellant.

W. Jeffrey Moore, Columbus, Ohio, for appellee.

_____

CRIMINAL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED:8-21-19
ABELE, J.

{¶ 1} This is an appeal from a Scioto County Common Pleas Court judgment that granted a motion to suppress evidence. The State of Ohio, plaintiff below and appellant herein, assigns the following error for review:

> "THE TRIAL COURT ERRED IN GRANTING THE APPELLEE'S MOTION TO SUPPRESS EVIDENCE."

{¶ 2} On March 25, 2017, Ohio State Highway Patrol Trooper Nick Lewis stopped a large pickup truck after clocking the vehicle traveling 65 miles per hour in a 55 mile-per-hour zone. The trooper approached the driver, appellee, and asked her to exit the vehicle. A

protracted series of events ensued, and the traffic stop eventually led to the discovery of a large amount of illegal drugs.

{¶ 3} On May 16, 2017, a Scioto County grand jury returned an indictment that charged appellee with four first-degree-felony drug related offenses, tampering with evidence, assault, and resisting arrest.

{¶ 4} Appellee later filed a motion to suppress evidence and alleged that the trooper's seizure and ensuing search violated her Fourth Amendment rights against unreasonable searches and seizures. Appellee thus requested the trial court to suppress all evidence obtained as a result of the traffic stop.

{¶ 5} On January 17 and 29, 2019, the trial court held a hearing to consider appellee's motion to suppress. Trooper Lewis testified that after he stopped appellee's vehicle and made the initial contact with appellee, he noted that her pants were undone. The trooper obtained appellee's driver's license and asked her to exit the vehicle. Before appellee exited the vehicle, she took a jacket from the truck and tied it around her waist. The trooper explained that he was curious why appellee's pants were undone and she had tied a jacket around her waist and he asked for permission to pat her down. The trooper claimed that appellee agreed to a pat-down search. During the pat-down search, the trooper stated that he felt something "hard" between appellee's legs. As the trooper started to question appellee about it, he saw appellee attempt to reach into the front of her waistband. The trooper thought it appeared as though appellee was attempting to remove a condom from her waistband. The trooper again patted appellee down to see if the hard object remained, and it did. The trooper then decided to place appellee under arrest.

{¶ 6} The state also played the video of the traffic stop. The transcription of the video reveals that the trooper asked appellee to step out of the vehicle so that he could check her license. The trooper also informed appellee that he was going to pat her down to ensure she did not have any weapons. As he did so, the trooper noted that he felt something "hard." He asked appellee whether she had anything in her pants, and she responded that she did not. He then told appellee he was going to "check again real quick." The trooper asked appellee to "[w]iden [her] stance." He asked appellee if she "want[ed]" to remove the item he felt. She again denied having anything in her pants. The trooper once more asked appellee to "[w]iden [her] stance."

{¶ 7} At this point appellee objected and demanded that a female officer be present. The trooper stated that none were working at that time. Appellee stated: "Well, you're going to have to call one. You're not allowed to search me. You're not allowed to search me." The trooper told her that he is "allowed" to search her. She responded: "No, you're not. You asked me if I had weapons on me. I don't have any weapons." The trooper stated: "but when I pat you down (inaudible) contraband." Appellee again denied having anything in her pants. The trooper stated: "Ma'am, you have drugs right there." Appellee once again denied having anything in her pants and stated that she was "on [her] period." She also denied having "a hard object" in her pants. The trooper then advised appellee of her rights and stated, "I can see it sticking out of your pants."

{¶ 8} The trooper next explained to appellee that she could either cooperate with him and hand over the "hard object" he felt in her pants, or she could continue to deny that she had anything in her pants and he would take her to jail. Appellee continued to deny that she had

anything in her pants.   The trooper thus transported appellee to the state highway patrol post.   A later series of events resulted in the discovery of a large amount of illegal drugs.

{¶ 9} On cross-examination, the trooper agreed that the reason he asked appellee to exit the vehicle was because he noted that her pants were undone.   The trooper stated that he suspected that appellee's pants were undone because she was attempting to conceal contraband. The trooper also agreed that appellee did not verbally consent to a pat-down search.   He nevertheless believed that appellee consented by acquiescence.   The trooper explained:   "She could have said no, but she consented to my request."   The trooper also stated that even though he "had a hunch that [appellee] had something down her pants," the purpose of his pat-down search was to check for weapons.   The trooper reported that he pats down "everybody for weapons.   If they get out of the car and they let me pat them down for weapons, I pat them down for weapons."

{¶ 10} On March 5, 2019, the trial court granted appellee's motion to suppress the evidence obtained as a result of the traffic stop.   The court found that the trooper did not have any reason to order appellee from the vehicle.   The court further noted that the officer did not articulate any safety-related concerns to justify a pat-down search.   The court thus suppressed the evidence.

{¶ 11} In its sole assignment of error, the state argues that the trial court erred by granting appellee's motion to suppress evidence.   In particular, the state contends that the trial court incorrectly determined that the trooper could not order appellee to exit the vehicle after stopping her for a traffic violation.   The state asserts that an officer need not have reasonable suspicion in order to direct a driver to exit a vehicle during a routine traffic stop.

{¶ 12} Appellate review of a trial court's ruling on a motion to suppress evidence involves a mixed question of law and fact. *E.g., State v. Castagnola*, 145 Ohio St.3d 1, 2015-Ohio-1565, 46 N.E.3d 638, ¶ 32; *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8; *State v. Moore*, 2013-Ohio-5506, 5 N.E.3d 41 (4th Dist.), ¶ 7.   Appellate courts thus "'must accept the trial court's findings of fact if they are supported by competent, credible evidence.'"   *State v. Leak*, 145 Ohio St.3d 165, 2016-Ohio-154, 47 N.E.3d 821, ¶ 12, quoting *Burnside* at ¶ 8.   Accepting those facts as true, reviewing courts "'independently determine as a matter of law, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.'"   *Id.*, *Burnside* at ¶ 8.

{¶ 13} The Fourth and Fourteenth Amendments to the United States Constitution, as well as Section 14, Article I of the Ohio Constitution, protect individuals against unreasonable governmental searches and seizures.  *Delaware v. Prouse*, 440 U.S. 648, 662, 99 S.Ct. 1391, 1400, 59 L.Ed.2d 660 (1979); *State v. Gullett*, 78 Ohio App.3d 138, 143, 604 N.E.2d 176 (1992). "[S]earches [and seizures] conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions."  *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967); *Leak* at ¶ 15; *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, ¶ 98.  Once a defendant demonstrates that he or she was subjected to a warrantless search or seizure, the burden shifts to the state to establish that the warrantless search or seizure was constitutionally permissible.  *Roberts* at ¶ 98; *Maumee v. Weisner*, 87 Ohio St.3d 295, 297, 720 N.E.2d 507 (1999); *Xenia v. Wallace*, 37 Ohio St.3d 216, 524 N.E.2d 889 (1988), paragraph two of the syllabus.

{¶ 14} A traffic stop initiated by a law enforcement officer constitutes a seizure within the meaning of the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 809–810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996); *Prouse*, 440 U.S. at 653. Thus, a traffic stop must comply with the Fourth Amendment's general reasonableness requirement. *Whren*, 517 U.S. at 810. "[T]he decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Id.* (citations omitted); *accord Dayton v. Erickson*, 76 Ohio St.3d 3, 11–12, 665 N.E.2d 1091 (1996). Consequently, "[p]robable cause is * * * a complete justification for a traffic stop * * *." *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 23; *accord Bowling Green v. Godwin*, 110 Ohio St.3d 58, 2006-Ohio-3563, 850 N.E.2d 698, ¶ 11.

{¶ 15} Moreover, we observe that traffic stops in general are "especially fraught with danger to police officers." *Michigan v. Long*, 463 U.S. 1032, 1047, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983). For this reason, a law enforcement officer who lawfully detains a motor vehicle for a traffic violation "may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures." *Pennsylvania v. Mimms*, 434 U.S. 106, 111, fn.6, 98 S.Ct. 330, 54 L.Ed.2d 331; *accord State v. Brown*, 4th Dist. Ross No. 18CA3644, 2019-Ohio-1112, 2019 WL 1430104, ¶ 15; *State v. Fowler*, 4th Dist. Ross No. 17CA3599, 2018-Ohio-241, ¶ 17, quoting *State v. Alexander-Lindsey*, 2016-Ohio-3033, 65 N.E.3d 129, ¶ 14 (4th Dist.). Furthermore, the officer need not have any suspicion that criminal activity might be afoot before the officer may order a driver to exit the vehicle. *State v. Evans*, 67 Ohio St.3d 405, 408, 618 N.E.2d 162 (1993) (holding that "a *Mimms* order does not have to be justified by any constitutional quantum of suspicion"). Instead, "[t]he government's

'legitimate and weighty' interest in officer safety * * * outweighs the 'de minimis' additional intrusion of requiring a driver, already lawfully stopped, to exit the vehicle." *Arizona v. Johnson*, 555 U.S. 323, 330–31, 129 S.Ct. 781, 786, 172 L.Ed.2d 694 (2009), quoting *Mimms*, 434 U.S. at 110–111. Additionally, once the driver of a lawfully detained vehicle steps outside, the officer may conduct a limited pat-down search for weapons "if the officer reasonably concludes that the driver 'might be armed and presently dangerous.'" *Johnson*, 555 U.S. at 330–31, quoting *Mimms*, 434 U.S. at 112.

{¶ 16} In the case sub judice, after our review it appears that the trial court incorrectly determined that Trooper Lewis could not order appellee to exit the vehicle. *Mimms* clearly states, however, that an officer may indeed order the driver of a lawfully stopped vehicle to exit his or her vehicle. Here, appellee did not suggest that Trooper Lewis unlawfully stopped her vehicle. Moreover, the record shows that Trooper Lewis stopped appellee for speeding, a traffic violation. A law enforcement officer may lawfully stop a vehicle for committing a traffic violation. *Whren*, 517 U.S. at 810. Therefore, in view of the fact that Trooper Lewis lawfully stopped appellee's vehicle, *Mimms* authorized Trooper Lewis to order appellee to exit her vehicle. The trial court erred by concluding otherwise. We further note that the trial court appears to have determined that, even if Trooper Lewis lawfully ordered appellee to exit the vehicle, the trooper lacked justification for conducting a pat-down search. However, after our review of the record and the trial court's disposition of the issues involved in this matter, we believe that the *Mimms* error in the first step of the trial court's analysis could have tainted the remainder of the trial court's analysis. Consequently, the trial court should have the opportunity to fully conduct an analysis of this matter free of its original misapplication of *Mimms*. We

hasten to add, however, that our disposition of this matter at this particular juncture should not be construed as a comment or view with respect to the eventual outcome of the pertinent issues. As such, the trial court may consider all applicable legal authority and assess witness credibility in order to fully analyze this matter and arrive at the conclusion it deems appropriate.

Accordingly, based upon the foregoing reasons, we sustain appellant's sole assignment of error, reverse the trial court's judgment and remand this matter for further proceedings consistent with this opinion.

JUDGMENT REVERSED AND
REMANDED FOR FURTHER
PROCEEDINGS CONSISTENT WITH
THIS OPINION.

JUDGMENT ENTRY

It is ordered that the judgment be reversed and remanded for further proceedings consistent with this opinion.   Appellant and appellee shall equally divide the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Hess J.: Concur in Judgment & Opinion

For the Court

BY:_____
Peter B. Abele, Judge

NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.