[Cite as *State v. Stacy*, 2020-Ohio-536.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
PIKE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | Case No. 18CA895 |
| Plaintiff-Appellee, | : | |
| v. | : | <u>DECISION AND</u> <u>JUDGMENT ENTRY</u> |
| WILLIAM RAY STACY, | : | |
| Defendant-Appellant. | : | **RELEASED 02/03/2020** |

_____
<u>APPEARANCES</u>:

Richard M. Nash, Jr., Portsmouth, Ohio, for appellant.

Robert Junk, Pike County Prosecutor, and Marie Hoover, Assistant Pike County Prosecutor, Waverly, Ohio, for appellee.
_____
Hess, J.

{¶1}   William Ray Stacy appeals his conviction for trafficking in heroin, a fourth-degree felony.  Stacy contends that the trial court erred when it denied his motion to suppress evidence because law enforcement lacked reasonable suspicion to initiate the traffic stop that resulted in the discovery of 99.96 grams of heroin.  However, the trial court was free to believe the testimony of a police sergeant that he observed a marked lanes violation.  Therefore, we reject Stacy's argument.

{¶2}   Stacy also contends that his conviction for a fourth-degree felony is not supported by sufficient evidence or is against the manifest weight of the evidence because the evidence did not support the jury's finding that the amount of heroin involved equaled or exceeded one gram but was less than five grams.  However, 99.96 grams of heroin includes an amount of heroin that equals or exceeds one gram but is

less than five grams.  Accordingly, sufficient evidence supports the conviction and it is not against the manifest weight of the evidence.  We affirm the trial court's judgment.

## I.  FACTS AND PROCEDURAL HISTORY

**{¶3}**  On February 2, 2017, Deputy Brock Clemmons of the Pike County Sheriff's Department received information from an anonymous caller that Stacy would be bringing a large shipment of heroin from Columbus southbound on U.S. Route 23 in a silver Chrysler van.  Deputy Clemmons relayed this information to Lieutenant Jim Burchett of the Pike County Sheriff's Office, and they coordinated with the Waverly Police Department and Piketon Police Department to intercept the van. Lieutenant Burchett instructed Sergeant Christopher Mosley of the Piketon Police Department to stop the van "if probable cause existed," and Sergeant Mosley told his chief that he "was going to go see if I could stop it."  Sergeant Mosley positioned himself near U.S. Route 23 in the Village of Piketon to intercept the van, Lieutenant Burchett and Deputy Clemmons stationed themselves south of Piketon, and another officer was at a third location.

**{¶4}**  According to Sergeant Mosley, after waiting about 50 minutes to an hour, he spotted the van, pulled out behind it, and observed Stacy "cross over the right edge line of the roadway, by more than half of his vehicle." Sergeant Mosley did not immediately initiate a traffic stop but instead waited until he and Stacy reached a location where Sergeant Mosley thought they could "pull off the roadway safely."  During the stop, Sergeant Mosley commented that Stacy had "swerved off the road pretty bad," and Stacy said that his passenger had been sick and something to the effect that he was "trying to render aid or stop her from puking in his van."  The stop resulted in the

discovery of four plastic-wrapped balls of heroin that collectively contained 99.96 grams of heroin. It also resulted in the discovery of 1.61 grams of cocaine on Stacy's person. A search of Stacy's home, pursuant to a search warrant, resulted in the discovery of $17,303.51 in cash.

**{¶5}** Sergeant Mosley issued Stacy a traffic citation for a marked lanes violation. The Piketon Mayor's Court later dismissed that case at the request of the Piketon Village Solicitor. According to Stacy, the case was dismissed due to lack of evidence, but in court records, the solicitor represented that the request was "not based upon lack of probable cause" and related to the existence of the "companion felony case pending in Pike County Court of Common Pleas."

**{¶6}** The Pike County grand jury indicted Stacy on one count each of (1) possession of heroin, a first-degree felony because the amount of heroin equaled or exceeded 50 grams but was less than 100 grams, see R.C. 2925.11(C)(6)(e); (2) trafficking in heroin, a first-degree felony because the amount of heroin equaled or exceeded 50 grams but was less than 100 grams, see R.C. 2925.03(C)(6)(f); (3) possession of cocaine, a fifth-degree felony because the amount of cocaine was less than five grams, see R.C. 2925.11(C)(4)(a); and (4) receiving stolen property, a fourth-degree felony because the property was a firearm, see R.C. 2913.51(C).[1] The possession of heroin, trafficking in heroin, and receiving stolen property charges each included forfeiture specifications for the $17,303.51 in cash and the van.

---

[1] The indictment listed the name of the first count as aggravated possession of drugs, the second count as aggravated trafficking in drugs, and the third count as possession of drugs. We have used the correct names for these offenses based on the other information in the indictment. The trial court used the correct names in the jury instructions and verdict forms.

{¶7}    Stacy pleaded not guilty and filed a motion to suppress.  At the hearing on the motion, Sergeant Mosley testified about the traffic violation. Stacy testified that while north of Piketon, he pulled over so his passenger could throw up, but while driving in Piketon, he never travelled over the right edge line.  Stacy claimed that during the traffic stop, Sergeant Mosley admitted that he did not see a traffic violation and stated that "Burchett had called him and said that [Stacy] had went across the line before [he] got to Piketon."  Stacy's friend, Robert Russell, testified that while driving on the day in question, he saw Stacy's van on the side of the road.  Stacy pulled onto the road, and Russell followed him into Piketon.  Russell saw a Piketon police officer pull out in front of him and behind Stacy and later saw the officer turn on his cruiser lights.  Russell did not see Stacy travel over the right edge line.  The court denied the motion to suppress.  Relevant here, the court found Sergeant Mosley's testimony about the traffic violation was credible, and the violation justified the stop.

{¶8}    Prior to trial, the state dismissed the receiving stolen property count.  The jury found Stacy not guilty of possession of heroin and possession of cocaine.  The jury found him guilty of trafficking in heroin.  The verdict form for that count gave the jury five options for the amount of heroin involved:  (1) less than one gram; (2) equal to or exceeding one gram but less than five grams; (3) equal to or exceeding five grams but less than 10 grams, (4) equal to or exceeding 10 grams but less than 50 grams; and (5) equal to or exceeding 50 grams but less than 100 grams. The jury found that the amount equaled or exceeded one gram but was less than five grams of heroin—a fourth-degree felony.  The jury also found that Stacy had to forfeit the van but not the cash.  The court sentenced Stacy to three years of community control.

## II.  ASSIGNMENTS OF ERROR

{¶9}    Stacy presents two assignments of error:

I.      THE EVIDENCE WAS INSUFFICIENT AS A MATTER OF LAW TO CONVICT APPELLANT OF TRAFFICKING IN MORE THAN ONE GRAM, BUT LESS THAN FIVE GRAMS OF HERION [sic]; OR, IN THE ALTERNATIVE, THE CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

II.     THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS EVIDENCE, IN VIOLATION OF THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION, AND SECTION 14, ARTICLE I OF THE OHIO CONSTITUTION, IN THAT THE STATE DID NOT HAVE REASONABLE SUSPICION TO MAKE AN INVESTIGATE [sic] STOP.

For ease of discussion, we address the assignments of error out of order.

## III.  MOTION TO SUPPRESS

{¶10}   In the second assignment of error, Stacy contends that the trial court erred when it denied his motion to suppress because Sergeant Mosley lacked reasonable suspicion to initiate an investigative stop. Stacy contends that Sergeant Mosley's testimony about the marked lanes violation lacked credibility.  Stacy highlights the fact that two witnesses—Russell and himself—testified that no marked lanes violation occurred and the fact that Sergeant Mosley did not initiate a traffic stop immediately after observing the alleged violation.  Stacy asserts that Sergeant Mosley only initiated the stop when Stacy exited the highway into a private parking lot and "[a]ny opportunity to observe a traffic violation had ended."  Stacy also emphasizes the fact that "three separate law enforcement groups were notified to stop" him, there were "stake outs" for him, and Sergeant Mosley said that he would try to stop Stacy and waited nearly an hour to do so.  Stacy asserts that when an officer has an ulterior motive for a stop

"courts should apply heightened scrutiny in determining whether an offense actually occurred."

{¶11} Generally "appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Codeluppi*, 139 Ohio St.3d 165, 2014-Ohio-1574, 10 N.E.3d 691, ¶ 7, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. The Supreme Court of Ohio has explained:

> When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.

(Citations omitted.) *Burnside* at ¶ 8.

{¶12} "The Fourth Amendment to the United States Constitution and the Ohio Constitution, Article I, Section 14, prohibit unreasonable searches and seizures." *State v. Emerson*, 134 Ohio St.3d 191, 2012-Ohio-5047, 981 N.E.2d 787, ¶ 15. The Supreme Court of Ohio has held that these provisions provide the same protection in felony cases. *State v. Hawkins*, ___ Ohio St.3d ___, 2019-Ohio-4210, ___ N.E.3d ___, ¶ 18, citing *State v. Jones*, 143 Ohio St.3d 266, 2015-Ohio-483, 37 N.E.3d 123, ¶ 12. "This constitutional guarantee is protected by the exclusionary rule, which mandates the exclusion at trial of evidence obtained from an unreasonable search and seizure." *State v. Petty*, 4th Dist. Washington Nos. 18CA26 & 18CA27, 2019-Ohio-4241, ¶ 11.

{¶13} " '[S]earches [and seizures] conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated

exceptions.' " (Alterations sic. Footnote omitted sic.) *State v. Conley*, 4th Dist. Adams No. 19CA1091, 2019-Ohio-4172, ¶ 17, quoting *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). "Once a defendant demonstrates that he or she was subjected to a warrantless search or seizure, the burden shifts to the state to establish that the warrantless search or seizure was constitutionally permissible." *State v. Dorsey*, 4th Dist. Scioto No. 19CA3874, 2019-Ohio-3478, ¶ 13.

{¶14} This case involved a warrantless investigatory stop, which "must be supported by a reasonable, articulable suspicion that the driver has, is, or is about to commit a crime, including a minor traffic violation." *Petty* at ¶ 12. In *Petty*, we recently explained:

> "To justify a traffic stop based upon reasonable suspicion, the officer must be able to articulate specific facts that would warrant a person of reasonable caution to believe that the driver has committed, or is committing, a crime, including a minor traffic violation." *State v. Taylor*, 2016-Ohio-1231, 62 N.E.3d 591, ¶ 18 (4th Dist.). The existence of reasonable suspicion depends on whether an objectively reasonable police officer would believe that the driver's conduct constituted a traffic violation based on the totality of the circumstances known to the officer at the time of the stop.
>
> Moreover, a police officer may stop the driver of a vehicle after observing even a de minimis violation of traffic laws. "[A] traffic stop with the proper standard of evidence is valid regardless of the officer's underlying ulterior motives as the test is merely whether the officer 'could' have performed the act complained of; pretext is irrelevant if the action complained of was permissible." *See State v. Koczwara*, 7th Dist. Mahoning No. 13MA149, 2014-Ohio-1946, ¶ 22, citing [*Dayton v. Erickson*, 76 Ohio St.3d 3, 7, 11, 665 N.E.2d 1091 (1996)].

(Citations omitted. First alteration sic.) *Id.* at ¶ 12-13.

{¶15} The trial court was free to believe Sergeant Mosley's testimony that he observed a marked lanes violation but waited to initiate a traffic stop until it was safe to do so. Even though two witnesses testified that no violation occurred, "[s]heer number

of witnesses testifying to a fact * * * is not the test of whether that fact is true." *Wright v. Suzuki Motor Corp.*, 4th Dist. Meigs Nos. 03CA2, 03CA3, 03CA4, 2005-Ohio-3494, ¶ 145. "The trier of fact is free to believe all, part, or none of the testimony of any witness[.]" *State v. Hammond*, 4th Dist. Ross No. 18CA3662, 2019-Ohio-4253, ¶ 56. We accord deference to the trier of fact on credibility issues because "it is in the best position to gauge the witnesses' demeanor, gestures, and voice inflections, and to use these observations to weigh their credibility." *Id.* The trial court found Sergeant Mosley's testimony credible, and we will not disturb its finding under these circumstances.

**{¶16}** The trial court's finding that Sergeant Mosley observed a marked lanes violation is supported by competent, credible evidence, and based on that violation, Sergeant Mosley had reasonable suspicion to initiate the stop. Accordingly, we overrule the second assignment of error.

## IV. SUFFICIENCY AND MANIFEST WEIGHT OF THE EVIDENCE

**{¶17}** In the first assignment of error, Stacy contends that his conviction is not supported by sufficient evidence or is against the manifest weight of the evidence.

**{¶18}** "When a court reviews a record for sufficiency, '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " (Alteration sic.) *State v. Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019, 9 N.E.3d 930, ¶ 146, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307, 99

S.Ct. 2781, 61 L.Ed.2d 560 (1979). In *State v. Anderson,* 4th Dist. Highland No. 18CA14, 2019-Ohio-395, we recently explained:

> A sufficiency assignment of error challenges the legal adequacy of the state's prima facie case, not its rational persuasiveness. "That limited review does not intrude on the jury's role 'to resolve conflicts in [the] testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.' " *Musacchio v. United States*, ___ U.S. ___, 136 S.Ct. 709, 715, 193 L.Ed.2d 639 (2016), quoting Jackson at 319 * * *.
>
> By contrast in determining whether a criminal conviction is against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that reversal of the conviction is necessary. In order to satisfy this test, the state must introduce substantial evidence on all the elements of an offense, so that the jury can find guilt beyond a reasonable doubt.
>
> Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence. However, we are reminded that generally, it is the role of the jury to determine the weight and credibility of evidence. " 'A jury, sitting as the trier of fact, is free to believe all, part or none of the testimony of any witness who appears before it.' " *State v. Reyes-Rosales*, 4th Dist. Adams No. 15CA1010, 2016-Ohio-3338, ¶ 17, quoting *State v. West*, 4th Dist. Scioto No. 12CA3507, 2014-Ohio-1941, ¶ 23. We defer to the trier of fact on these evidentiary weight and credibility issues because it is in the best position to gauge the witnesses' demeanor, gestures, and voice inflections, and to use these observations to weigh their credibility.

(Citations omitted.) *Id.* at ¶ 13-15.

**{¶19}** R.C. 2925.03(A)(2) makes it crime to knowingly "transport * * * a controlled substance * * *, when the offender knows or has reasonable cause to believe that the controlled substance * * * is intended for sale or resale by the offender or another person." The degree of the offense depends on the amount and type of drug being trafficked. Relevant here, "[i]f the drug involved in the violation is heroin or a compound,

mixture, preparation, or substance containing heroin" and "[i]f the amount of the drug involved * * * equals or exceeds fifty grams but is less than one hundred grams * * * trafficking in heroin is a felony of the first degree[.]"  R.C. 2925.03(C)(6)(f).  However, "if the amount of the drug involved * * * equals or exceeds one gram but is less than five grams, trafficking in heroin is a felony of the fourth degree[.]"  R.C. 2925.03(C)(6)(c).

{¶20} Stacy maintains that the jury could not find him guilty of a fourth-degree felony because there is no evidence that he trafficked an amount of heroin that equaled or exceeded one gram but was less than five grams.  Rather, he asserts that the only evidence was that law enforcement seized four balls of heroin that collectively weighed 99.96 grams, which is in the range for a first-degree felony.  Essentially, Stacy argues that the jury had to either convict him of a first-degree felony or acquit him.

{¶21} Stacy's argument is not well-taken.  99.96 grams of heroin includes an amount of heroin that equals or exceeds one gram but is less than five grams of heroin. That fact is not somehow nullified because the jury could have found Stacy guilty of trafficking a greater amount of heroin than it did.  Although Stacy suggests that the jury had to either convict him of a first-degree felony or acquit him, he did not object to the jury instructions or verdict form for the trafficking in heroin count, which allowed the jury to consider five options for the amount of heroin. Stacy also did not challenge the instructions or verdict form on appeal.

{¶22} Sufficient evidence supported the conviction for fourth-degree felony trafficking in heroin, and the conviction is not against the manifest weight of the evidence.  Accordingly, we overrule the first assignment of error.

## V.  CONCLUSION

{¶23} Having overruled the assignments of error, we affirm the trial court's judgment.

JUDGMENT AFFIRMED.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Pike County Court of Common Pleas to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Hall, J.*: Concur in Judgment and Opinion.

For the Court

BY: _____
        Michael D. Hess, Judge

### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**

*Judge Michael T. Hall, Second District Court of Appeals, sitting by assignment of the Supreme Court of Ohio in the Fourth Appellate District.